# CASES

# SUPREME JUDICIAL COURT

## COUNTY OF CUMBERLAND, APRIL TERM, 1837.

---

## WILLIAM POLLEYS *vs.* OCEAN INSURANCE COMPANY.

An old vessel built upon and enlarged and enrolled without intended fraud by a new name, without delivering up the old register, and thereby rendered liable to forfeiture by the laws of the *United States,* is the lawful subject of insurance against the usual perils of the seas; and the insurers cannot avoid the payment of a loss covered by the policy by reason of such liability.

If there be no stipulation in the policy, that the vessel insured is a vessel of the *United States,* such enrolment by the new name, is competent evidence to prove the property to be in the assured.

Where the national character of the vessel is not made a part of the contract of insurance, the want of the proper documents to show such character is not material, unless it appear, that the loss happened, or that the risk was increased, in consequence of the want of such documents.

The declarations of a stockholder or of a director of a corporation, are not admissible in evidence against such corporation, made at a time when he was not acting as the agent thereof.

Where one agreed to employ a vessel for a certain time, paying for her use a share of her earnings, and during the time and while under his control and while he was acting as Master, a loss of the vessel happened; his declarations, made after the loss, are not admissible in evidence against the owner.

Answers to questions put by way of explanation of the testimony called out by the other party, are not admissible in evidence, when the testimony, which they were intended to explain, is excluded.

Objections to the form of the questions and to the manner of the examination should be made before the commission issues, when testimony is taken by commission, and when on notice, before the magistrate at the time of the taking; but testimony in itself illegal cannot be admitted, because objections are not thus made.

Polleys *v.* Ocean Insurance Company.

Where a party takes a deposition he may withdraw it at any time during the first term, and in such case it is not evidence for either party; but if it be left on file after the first term, under rules 31 and 43 of this Court, the opposing party has the right to read it in evidence in his favor.

Those rules of Court do not contravene the provisions of the statutes in relation to the taking of depositions.

And if the party by whom the deposition was taken shall take the same from the files of the Court after the first term, and will not produce it, the opposing party may read a copy thereof in evidence.

The admission of improper testimony in relation to a particular fact, but which fact is wholly immaterial to the issue, furnishes no cause for a new trial.

THIS is an action of *assumpsit* on a policy of insurance, bearing date *July* 17, 1833, upon the schooner called the *Mary*, and owned by the plaintiff, for the term of one year, commencing on the 11*th* of said *July;* the sum insured being $3000. The schooner, during the year, viz. *June* 10, 1834, was totally lost.

It appeared on trial, that a sloop was built in 1816, and was enrolled by the name of the *Sophronio*, and was again enrolled in the Custom House in *Portland*, by the same name, *March* 24*th*, 1832; that the said schooner *Mary* was built upon the keel, floor-timbers, and naval-timbers of the sloop *Sophronio*, and the size enlarged nearly 12 tons, and the name of the *Mary* given to her after being so enlarged; and that this was known to the defendants at the time of executing the policy; and that the certificate of the builder of the vessel, was procured by the plaintiff and presented to the Custom'House, to obtain the enrolment of the schooner *Mary*, without any intent to deceive or defraud, but with fair and honest intentions, as the jury believed; but that the enrolment of the sloop *Sophronio* was not first surrendered and delivered up at the Custom House before the issuing of the enrolment of the *Mary*, which was on the third day of *June*, 1833.

The counsel for the defendants objected to the admission in evidence of the said enrolment of *June* 3*d*, 1833, as contrary to the laws of the *United States;* but *Emery J.*, before whom the trial was, overruled the objection, and it was admitted. And the same counsel further insisted, that said schooner, on the voyage on which she was lost, was sailing under circumstances rendering her liable to forfeiture for the violation of said laws; and that therefore a policy on a vessel, pursuing such a voyage, was not valid or legal,

or binding; but the Judge also overruled this objection, as insufficient to bar said action. To prove a loss of the vessel within the terms of the policy, the plaintiff offered, in addition to other evidence, to read to the jury a copy of the deposition of *James L. Young.* The original deposition had been taken at the request of the defendants, to be used in the action prior to a former term of this Court, at which a trial took place, but was withdrawn by the defendants, though not during the term for which it was taken, and was not used at the former trial, *Young* being then present and sworn as a witness for the plaintiff.

The admission of such copy was objected to by the defendants' counsel; the plaintiff's counsel at the same time calling for the production of the original, but it was not produced. The presiding Judge overruled the objection, and admitted it in evidence.

The plaintiff also offered a witness to prove that *Benjamin Knight,* who was one of the Directors of said Insurance Company, then, and also at the time said insurance was effected, some short time after the loss of the schooner, on the tenth of *June,* 1834, stated he, said *Knight,* and the other Directors of the Insurance Company, knew, when the policy was effected, that the schooner was not a new vessel, but was the old sloop *Sophronio,* built upon; to the admission of this testimony, the counsel for the defendants objected, inasmuch as said *Knight* was living in *Portland,* and might be examined by the plaintiff, as a witness; but the Judge overruled the objection, and the evidence was admitted.

And *afterwards,* the said *Knight,* having sold out his stock, was offered and admitted a witness on the part of the defendants, and contradicted the testimony of the witness.

The defendants then offered to read to the jury the depositions of *Messrs. Parsons, Weare* and *Freeman,* which were taken upon due notice, and the counsel for the plaintiff was present at the taking of the same. These depositions contained certain declarations, testified to by them to have been made by *Joseph Bean,* who was on board said vessel just before she sunk and was lost. These declarations were contended by the defendants to have a tendency to support the charge, and warrant the conclusion of gross negligence in the management of the vessel, such as to discharge the defendants, and were comprised in the body of the depositions; and with-

out any objection made thereto at the time, in answer to questions put by the *defendants'* counsel, to which no objection was then made ; and in answer to the questions put by the *plaintiff's* counsel, without any restrictions or limitations ; and the defendants' counsel contended, that such declarations and answers were allowable to be read to the jury, inasmuch as no objections were made to them, or to the questions of the plaintiff at the time they were taken, and such as were in answer to questions proposed by the plaintiff. But the Judge ruled, that such declarations and answers were not admissible in the cause, and excluded them. The plaintiff read to the jury a contract between the plaintiff and *Joseph Bean* and *John Polleys*, the nature of which sufficiently appears in the opinion of the Court ; and it was proved, that said *Bean* was at *Cape Neddock*, near which the vessel sunk, while efforts were made by persons employed by the Insurance Company for the purpose of raising said vessel from the place where she sunk, in about seventeen fathoms of water. And the defendants' counsel contended, that by the terms of said contract, *Bean* was the agent of the plaintiff at that time, and in such a situation, as to render his declarations admissible in evidence ; and the defendants offered proof of said *Bean's* declarations, tending to show unseaworthyness of said vessel and gross negligence in the management of the vessel, and criminality of conduct in the circumstances occasioning her loss ; and particularly what said *Bean* said were the wishes of the plaintiff as to having said vessel raised from the place where she was then laying ; but the Judge refused to admit proof of such declarations. The cause was thereupon submitted to the jury, who returned their verdict in favor of the plaintiff. To these opinions and rulings of the Judge, the counsel of the defendants excepted.

*Mellen* and *Daveis*, for the defendants, in their argument, contended that the verdict should be set aside.

1. The papers showing the enrolment of this vessel, as the schooner *Mary*, were improperly admitted in evidence. Having been built on the sloop *Sophronio*, and the register of the sloop never having been delivered up, it was not the subject of enrolment under the laws of the *United States*, and not the subject of insurance. Act of Congress respecting the registering of ships and vessels, *c.* 146, § 14, 27.

2. The policy in this case gives no right of action to the plaintiff, because an insurance on a vessel, subject to forfeiture for a *violation of our own laws*, is void. And it makes no difference whether the insurers are or are not conusant of this fact. 3 *Kent's Com.* 3d ed. 262; *Richardson* v. *M. F. & M. Ins. Co.* 6 *Mass. R.* 102; *Cook* v. *E. F. & M. Ins. Co. ib.* 122; *Wheatland* v. *Gray, ib.* 124; *Breed* v. *Eaton,* 10 *Mass. R.* 21; *Hayward* v. *Blake,* 12 *Mass. R.* 176; *Russell* v. *De Grand,* 15 *Mass. R.* 35; 1 *Phillips on Ins.* 119, and cases there cited; *Warren* v. *Man. Ins. Co.* 13 *Pick.* 521; 2 *Phillips on Ins.* 113.

3. The testimony of the declarations of *Knight,* tending to show, that the defendants knew this to be an old vessel built upon, with a new register, was improperly admitted. He was not an agent of the defendants. The declarations of a corporator, or director, cannot be given in evidence to charge a corporation. Besides, *Knight* was a competent witness for the plaintiff. 2 *Stark. on Ev.* ed. of 1826, 41, and cases there cited; *Hartford Bank* v. *Hart,* 3 *Day,* 493; *Masters* v. *Abraham,* 1 *Esp. R.* 375; *Helyar* v. *Hawke,* 5 *Esp. R.* 72; *Peto* v. *Hague, ib.* 135; *Framingham Man. Co.* v. *Barnard,* 2 *Pick.* 532; 1 *Phil. Ev.* 74; *Langhorn* v. *Allnut,* 4 *Taunt.* 511; *Haven* v. *Brown,* 7 *Greenl.* 421; *Alexander* v. *Mahon,* 11 *Johns. R.* 185; *Woodward* v. *Payne,* 15 *Johns. R.* 493.

4. The copy of *Young's* deposition was improperly admitted in evidence. If the original had been present, the plaintiff had no right to use it. The witness had been present in Court and examined, and we could not use the deposition, nor could they. The rule of Court, too, is peremptory, that we could not make use of the deposition, if we withdrew it. *Potter* v. *Leeds,* 1 *Pick.* 309. The deposition was our property, and it never became a paper in the case. The rule of Court on this subject, does not profess to give to the other party a deposition taken by us, and would be against the statute, and not binding, if it did. The deposition is a different one from what it would be, if they took it, or he was called as a witness, by them. They could ask questions, when we took the deposition, which they could not, if they took it. In no case can a deposition be legally read, but by the party taking it.

5. The exclusion by the Judge of the portions of the deposition which related to the declarations of *Bean* was erroneous. The objections extended to questions and answers, where no objection was made before the magistrate at the time the deposition was taken, and to questions asked by the plaintiff as well as by the defendants. All these were excluded by the Judge. Certainly the answers to questions put by the plaintiff, were proper evidence to be offered by us. The testimony of the declarations of *Bean* was proper, because *Bean* was the agent of the plaintiff. *Potter* v. *Leeds*, 1 *Pick.* 309; *Talbot* v. *Clark*, 8 *Pick.* 51; *Woodman* v. *Coolbroth*, 7 *Greenl.* 181; *Alsop* v. *Com. Ins. Co.* 1 *Sumner*, 451; *Swett* v. *Poor*, 11 *Mass. R.* 549; *Denny* v. *Lincoln*, 5 *Mass. R.* 385; *Churchill* v. *Perkins*, ib. 541; *Wheeler* v. *Russell*, 17 *Mass. R.* 258; *Dwight* v. *Brewster*, 1 *Pick.* 50; *Little* v. *O'Brien*, 9 *Mass. R.* 423; *Waite* v. *Merrill*, 4 *Greenl.* 102.

*Fessenden & Deblois*, for the plaintiff, after remarking that the jury had settled, that what took place in relation to the building and enroling of the vessel was done in good faith and without fraud, and was known to the defendants, when the insurance was effected, said that the true question on the first and main point was this: does the fact that the old enrolment was not given up, *ipso facto*, make the insurance on the vessel void? and contended, that it did not. Any difficulties and disabilities in relation to the government, which might subject the vessel to forfeiture, if the government chose to interfere, do not make void a contract of insurance, or other contract in relation to the same vessel, lawful in itself. *Warren* v. *Man. Ins. Co.* 13 *Pick.* 518; *Law* v. *Hollingworth*, 7 *T. R.* 156; *Bell* v. *Bromfield*, 15 *East.* 364; *Lowell* v. *Roy, Ex. A. Co.* 4 *Taunt.* 589; *Dawson* v. *Atty*, 7 *East*, 367; *Bell* v. *Carstairs*, 14 *East*, 374; *Rich* v. *Parker*, 7 *Term R.* 701; *Ward* v. *Wood*, 13 *Mass. R.* 589; *Gremare* v. *LeClerk*, 2 *Camp.* 144; *Freeman* v. *Walker*, 6 *Greenl.* 68; *Levy* v. *Merrill*, 4 *Greenl.* 180; 3 *Wash. Cir. C. R.* 138; 1 *Phil. on Ins.* 119.

The declarations of *Benjamin Knight* were rightly admitted in evidence,

1. Because he was a Director, and a Director is an agent of the corporation. 2 *Stark. Ev.* 56; 7 *Greenl.* 118; 2 *Peters*, 358; 12 *Wheat.* 468; 2 *Stark. Ev.* 60; 5 *Esp. R.* 145; 2 *Esp. R.*

511; 2 *Stark. R.* 180; 10 *Johns. R.* 38; 11 *East*, 578; 10 *East*, 395; 1 *Camp.* 22; 2 *Root*, 30; 7 *Greenl.* 76.

2. Because *Knight* was a party in interest, as a member of the corporation. 11 *East*, 578; 2 *Stark. Ev.* 41; 16 *East*, 143; 1 *Wilson*, 257; 1 *Bingham*, 45; 10 *East*, 292, and cases cited in *Day's* note; 7 *Greenl.* 51; 2 *Pick.* 345; 14 *Mass. R.* 282; 17 *Mass. R.* 503; 7 *Cranch*, 299; 5 *Mass. R.* 80; 1 *Pick.* 297.

3. And because the objections made by the defendants to the admission of *Knight's* declarations, were waived by their calling him.

The copy of *Young's* deposition was rightly admitted. By the rules of this Court, 31 and 43, the party taking a deposition must make his election, whether to use it or not, at the first term. If he leaves it on file after the first term, he has no right to withdraw it, and either party may use it, as a paper in the case.

The evidence offered of the declarations of *Bean* was rightly rejected. When the objection goes only to the form of the question, the objection should be made before the magistrate; but when the subject matter of the evidence is the cause of objection, it is rightly made in Court.

*Bean* was no agent of the plaintiff. He was not appointed by him, and was a mere charterer of the vessel. 4 *Greenl.* 264; 15 *Mass. R.* 370; 16 *Mass. R.* 336. *Bean* was present in Court, and the defendants might have called him; and on this ground, the rejection was right.

The action was continued, for advisement, and the opinion of the Court afterwards drawn up and delivered by

SHEPLEY J. — One of the questions presented by this bill of exceptions is, whether the contract declared on was under the circumstances a legal contract. To enable us to come to a right conclusion, it is desirable, that the principles by which we must be guided, should be, if possible, clearly stated.

Neither the law nor the Court can degrade itself by becoming the minister of evil. The consideration of a contract, or the matter out of which it arises, must therefore be legal. The object to be accomplished, or the act required to be performed by it, must also be legal. And although by itself considered the objects or

acts required by it may be legal, yet if the design of the contract be to aid or assist in the accomplishment of an illegal purpose, it partakes of the character of the transaction, with which it thus connects itself, and becomes tainted by it and illegal. To prove property in any thing, it must be shewn, that the law allows that thing to be the subject of property in the character and under the circumstances in which the claim is asserted; otherwise one can establish no right of property in it. When a contract is formed upon a consideration legal at the time, its validity will not be impaired, though the law should afterwards declare the matter forming the consideration to be illegal. So if the act required to be performed be at the time legal, and the law afterward make the performance illegal, that does not render the contract illegal, though it prevents the performance of it.

These are principles alike valuable to the community, as they are necessary to maintain the character of the law and of judicial tribunals. But while they are by no means to be infringed, they must not be pushed to such extremes as to interrupt, or embarrass the complicated transactions of society. The principles do not, nor would it be consistent with the ordinary transactions of life that they should require all contracts to be considered illegal, which grow out of some matter, or property, in which there had been incorporated, or to which had before attached, some illegal act. The law may declare, that on account of such former illegal ingredient, the article shall no longer be considered the subject of property, and in such case, it cannot afterward form the basis of a legal contract. But if, notwithstanding the illegal act or ingredient attaches to it, the law permits it to be the subject of property, either absolutely or conditionally, until forfeited by some act yet to be performed, it may form the basis of a legal contract.

When contracts are formed upon new or collateral considerations, and when they partake of the original illegal act, was much considered, and the cases were collected, in *Armstrong* v. *Toler*, 11 *Wheat*. 258. The Chief Justice says, " how far this principle [that of illegality] is to affect subsequent or collateral contracts, the direct and immediate consideration of which is not immoral or illegal, is a question of considerable intricacy, on which many controversies have arisen and many decisions have been made." This re-

mark must be understood rather as referring to the difficulty of applying the rule of law to the complicated transactions of business, than to any difficulty in comprehending the rule itself. In that case the consignee of goods, introduced contrary to law by collusive capture, and afterward decreed forfeit, was allowed to recover the money paid on a bond, given for their appraised value. And the rule is there stated to be, that " if the promise be unconnected with the illegal act, and is founded on a new consideration, it is not tainted by the act, although it was known to the party to whom the promise was made." That case may serve to illustrate the application of the rule where the new contract does not connect itself with the illegal act. And the case of *Cannan* v. *Bryce*, 3 *Barn. & Ald.* 179, as an illustration of the application of it, when the new contract is connected with the original act. The act of 7 *Geo.* 2, *ch.* 8, relating to stock jobbing, prohibits the payment of any money on account of not transferring stocks in such cases ; and it was decided, that one, who lent moneys for the purpose of enabling a person to make such unlawful payment with a full knowledge of the object to which they were to be applied, and for the express purpose of accomplishing that object, could not recover. Here the lending of the money, by itself considered, was an independent and legal act, but being for the very purpose of assisting to do an illegal act, it became connected with it and thereby illegal.

In the law of insurance an exception to these rules has been established in the most commercial countries of modern times, by declaring those contracts to be legal, which are made with the intention *to violate* the laws of trade of a foreign country. Such an exception breaks in upon the morality and harmony of legal science ; and since the reasonings of *Pothier,* and of *Story,* and of *Kent,* and of other eminent jurists, the exception can only be sustained by allowing private interest to overcome the sense of moral and legal right. Whether the question can be presented so as to enable a court to act upon it *de novo,* or whether it must remain a blot upon the law, may be doubtful.

The policy, in this case, was not upon any particular voyage, but for the term of one year. There is nothing in the case, which shews, that any illegal voyage was contemplated by the contract, or that any such was in fact undertaken. The contract cannot

therefore be illegal by reason of any act required by it, nor by reason of any aid intended to be given by it, to the performance of an illegal adventure. The consideration was then, the payment of the premium on the one hand for, and the assumption on the other of, the risk of the legal employment of the vessel for one year. There being nothing illegal in the consideration of the contract, or in the employment of the vessel to be aided by it; the contract can only be illegal by being in some way connected with the prior illegal act, which had by the manner of building and by the use of the enrolment, attached to the vessel. Is there any such connection shewn? By the act of Congress concerning the registering and recording of ships and vessels, *ch.* 146, *sec.* 14, it is provided, that when a vessel "shall be altered in form or burthen by being lengthened or built upon," she shall be registered anew by her former name; and that her former certificate of registry shall be delivered up, under a penalty of five hundred dollars. The twenty-seventh section of the same act provides, "that if any certificate of registry or record shall be fraudulently or knowingly used for any ship or vessel not then actually entitled to the benefit thereof, according to the true intent of this act, such ship or vessel shall be forfeited to the *United States.*" By the act for enroling and licensing ships and vessels, *ch.* 153, *sec.* 2, vessels enrolled are put upon the same footing as to qualifications, and are subjected to the same requisites, as registered vessels. The jury found, that the enrolment by the new name was procured by the plaintiff, "without any fraudulent intent to deceive or defraud;" but that finding does not extend to the after use of it; and the vessel may be regarded as having been liable to seizure and forfeiture. This liability was for a cause in no manner connected with the contract of insurance. It had existed and its influence had been as great upon the vessel, as it could at any time be, before this contract of insurance was made. The act was complete. It neither required, nor could it receive aid from the new contract. In this respect, it was more entirely free from all connection with the new contract, than the illegal act in the case of *Armstrong* v. *Toler* was. It would be very detrimental to the commerce of the country to hold, that a vessel was not the subject of a lawful insurance because she was liable to seizure and forfeiture for a cause not connected with the policy. The laws of the *United States* contem-

plate, that vessels are thus liable for causes arising without wilful negligence or intention of fraud. Cases of that kind are not of unfrequent occurrence, and the Secretary of the Treasury is authorized by law to remit the forfeiture. It could never have been the design of the statute under such circumstances to destroy the legal title, or lawful right of employment, until the forfeiture was exacted. The risk is not increased, nor is the loss for such cause within the policy. The assurers cannot place themselves in the situation of the government, and claim to act for it. None can claim a forfeiture, but those authorized by law. Nor can this matter be properly tried collaterally, and by a Common Law Court. The jurisdiction belongs to another tribunal. It is a matter between others, in which the defendants are not interested, and with which they have no concern.

There is another aspect in which the same transactions are presented. It is insisted, that the enrolment should not have been admitted in evidence in proof of property, because an unlawful document cannot be used as proof. In considering this question, it will be necessary to bear in mind, that it does not appear in the case, that the vessel was insured as a vessel of the *United States.* Her national character does not appear to have entered into the contract. If such had been the fact, the plaintiff could not recover, because the laws of the *United States* declare, that if not registered by the former name, in case she has been built upon, " she shall cease to be deemed a ship or vessel of the *United States.*" As she was not insured as a vessel of the *United States*, and as the laws do not for such cause destroy the title to the property, their effect being only to take from that title the particular character of being a vessel of the *United States*, the document was properly admitted.

It is also contended, that not being properly and legally documented, she was not seaworthy ; and that she was not the proper subject of insurance. It is necessary here, again to notice a distinction. If, for the want of legal documents, the voyage is, by the laws of the country, rendered illegal, then the policy is void on account of the illegality of the voyage. Upon this principle alone, the case of *Farmer* v. *Legg*, 7 *Term R.* 186, could have been decided. But if, as in the present case, the laws do not declare

the voyage to be illegal on account of the want of the proper documents, then the consequences are left to be determined by the mercantile law. And by that law, where the national character of the vessel is not made a part of the contract, the want of such documents is not material, unless it appears, that the risk was enhanced, or that the loss happened in consequence of the want of them; in which case, the insured cannot recover. 7 *East*, 367, *Dawson* v. *Atty*; 14 *East*, 374, *Bell* v. *Carstairs*; 2 *Johns.* 157, *Elting et al.* v. *Scott et al.* Nothing appearing in this case to bring it within this rule, these objections cannot prevail.

The next question presented, relates to the admission of the declarations of *Benjamin Knight*, a stockholder and one of the directors of the company. The declaration was not made while acting in the business of the company, but after the loss happened; and it purports to state the knowledge of the company at the time the insurance was effected. Such declarations cannot be received as coming from an agent of the company, when he was not acting in that character. *Haven* v. *Brown*, 7 *Greenl.* 421. The rights of all corporate bodies would be wholly insecure, and at the mercy of each corporator, if the admission or declarations of one corporator could charge the corporation. The principle cannot be admitted. And the testimony must be regarded as improperly received. 2 *Stark. Ev.* 580; 3 *Day*, 491, *Hartford Bank* v. *Hart*. But as these declarations related to a matter, as has already been determined, which did not affect the contract, they were immaterial to the issue; and there is no sufficient cause for setting aside the verdict on that account.

A question is also made respecting the exclusion of the declarations of *Joseph Bean*, and the depositions of *Freeman*, *Parsons*, and *Weare*. It appears in the case, that *Bean*, with another person, had agreed with the plaintiff to employ the vessel for a certain time, paying for her use a share of her earnings, and that during that period she was lost, he being on board at the time of the loss. The declarations were not made while he was on board, but after the loss had happened. By the contract, *Bean* was not acting as the agent of the plaintiff, but on his own account. He could not bind the plaintiff in any contract made with others in consequence of the agreement for the employment of the vessel. No

Polleys *v.* Ocean Insurance Company.

declarations made by him could therefore be admissible, on the ground of agency. And even if he had been an agent, his declarations, made while he was not acting in that character, but after the loss happened, could not be admitted. The questions put by the plaintiff to *Freeman, Parsons,* and *Weare,* appear to have been put only by way of obtaining explanations of the testimony called out by the defendants; and the answers cannot be evidence, when the testimony, which they were intended to explain is excluded. Nor can illegal testimony be admitted because it was not objected to before the magistrate taking the deposition. The proper rule upon this point can go no further, than to require, that any objection to the form of the question and to the manner of examination should be taken before the commission issues, when taken under a commission, or at the time of taking the testimony, when not so taken. The magistrate cannot judge of the legal character of testimony, which may, or may not, be rendered admissible by events which may take place during the course of the trial. There does not appear to have been any error in excluding this testimony.

Whether the copy of the deposition of *Young* was, under the circumstances properly admitted, may depend upon the right of the plaintiff to use the original deposition if it had been then on file. And a majority of the Court are of opinion, [in which I do not concur,] that the 31st rule, taken in connection with the 43d, by implication gave the plaintiff the right to use the deposition; and that such a construction of the rules does not contravene the provisions of the statute. This objection is therefore overruled; and judgment is to be entered upon the verdict.