OSCAR W. MOYLE, Assignee, Respondent, *v.* CONGREGATIONAL SOCIETY OF SALT LAKE CITY, Appellant.

CONTRACT—MODIFICATION OF WRITTEN CONTRACT BY ORAL AGREEMENT—AUTHORITY OF AGENT—RATIFICATION BY PRINCIPAL—ACCOUNT FOR WORK DONE—RES GESTÆ—CONTEMPORANEOUS AGREEMENT.

1. *Modification of a Written Contract by an Oral Agreement.*
   Where a written contract has been assigned, and the terms of

the assignment in writing are the same as the original, it is not competent to introduce evidence of the oral contract which would annul or set aside the terms of the written contract, when it appears that the alleged oral contract was made at the time, or prior, and which led up to the making of the written assignment of the contract.

2. *Ratification.*

If an officer of a corporation openly exercises power which presupposes a delegated authority for the purpose, and the corporate acts show that the corporation must have contemplated the legal existence of such authority, the acts of such officers will be deemed rightful, and the delegated authority will be presumed. But implied authority to do certain things confers on the agent no greater power than express authority to do the same thing.

3. *Authority of Agent—Implied Agency.*

"In order for an agent to bind the principal, it must appear that the acts of the agent were in the exercise of the power delegated to him, and within the limits and scope of the power;" and the fact that an agent exercised certain powers under a building contract, by way of alterations, does not imply that he had authority to bind the principal to an oral building contract, different from the one under which he exercised the power to make changes in, or reject, work done. Acts done by an agent with the knowledge and acquiescence of the principal raise the inference that the agent had authority to do acts of a similar nature. Directors of a corporation can only bind the corporation when they speak through the board of directors. An implied agency is not to be extended by construction beyond the obvious purpose for which it was created.

4. *Ratification by Principal.*

The ratification of an unauthorized act of an agent, in order to be effectual and binding upon the principal, must have been made with a full knowledge of all the material facts.

5. *Acceptance of Building.*

The fact that a society uses a building erected upon its real estate does not necessarily make the society thereby liable for the work done and material furnished, when the same cannot be separated from the structure.

6. *Res Gestæ—Past Transaction.*
> A conversation had several days after a contract has been made, in which conversation the agent is said to have given his reasons for buying off and changing the building contractor, is no part of the *res gestæ*, and is therefore not admissible in evidence.

(No. 856.    Decided Oct. 19, 1897.)

Appeal from the Third district court, Salt Lake county. A. N. Cherry, *Judge.*

Action by Oscar W. Moyle, as assignee of the Burton-Gardner Company, a corporation, against the Congregational Society of Salt Lake City. Judgment for plaintiff. Defendant appeals. *Reversed.*

*Bennett, Harkness, Howat & Bradley,* for appellant.

Oral testimony varying the written contract was not admissible. 1 Greenleaf on Ev. 15th Ed. Sec. 275; *Ninmam* v. *Suhr,* 91 Wis. 392; *Washabaugh* v. *Hall,* 56 N. W. Rep. 82; *Northern Trust Co* v. *Hillgen,* 64 N. W. Rep. 909; *Calmelet* v. *Sichl,* 67 N. W. Rep. 467; *Gurney* v. *Morrison,* 41 Pac. Rep. 192; *Oliver* v. *Heil,* 70 N. W. 346; *Talbot* v. *Wilkins,* 31 Ark. 411, 420; *Hussman* v. *Wilke,* 50 Cal. 250; *Brown* v. *Thurber,* 77 N. Y. 613.

Whether the agent did the acts from which it is claimed the authority should be inferred, is a question of fact for the jury, but what authority may be inferred from the facts proven, is purely a question of law for the court. *Railway Co.* v. *Lamoreaux,* 49 Pac. Rep. 152, 153; *Edwards* v. *Dooley,* 120 N. Y. 540, 551; *Bickford* v. *Menier,* 107 N. Y. 490, 499.

In order to bind the principal, it must appear that the act done by the agent was in the exercise of the power delegated, and within its limits. *Blum* v. *Robertson,* 24 Cal. 127, 141; *Graves* v. *Horton* (Minn.), 35 N. W. 568; 4 Thompson on Corp. secs. 4883, 4884, 4886.

Before there can be a ratification of, an unauthorized contract made by the agent there must be full knowledge on the part of the principal of all the terms and conditions of the contract and an act of approval or adoption of the contract made upon ignorance or misapprehension of the facts will not be a ratification. *Baldwin* v. *Burrows*, 47 N. Y. 192, 212; *Smith* v. *Tracy*, 36 N. Y. 79, 86; *Ætna Ins. Co.* v. *N. W. Iron Co.*, 21 Wis. 458; *Bennecke* v. *Ins. Co.*, 105 U. S. 355, 360; *Dupon* v. *Wetherman*, 10 Cal. 354, 368; *Brown* v. *Pouse*, 104 Cal. 672; *Pa., D. & M. Nav. Co.* v. *Dandridge*, 29 Am. Dec. 543, 547; *Field* v. *Small* (Colo.), 30 Pac. 1034.

Notice to the agent to be notice to the principal must be given to him while acting in the course of his employment. 4 Thomp. on Corp. sec. 5221; *Whitenbrock* v. *Parker*, 102 Cal. 93, 101; *Bank* v. *Cormen*, 37 N. Y. 320; *Houseman* v. *Association*, 81 Pa. St. 256, 262; *Satterfield* v. *Malone*, 35 Fed. Rep. 445, 453.

*Moyle, Zane & Costigan*, for respondent.

When a party claims, receives and retains the property of another, knowing that it was obtained by an unauthorized use of his name, it is a ratification of the assumed agency, which evinces his assent to the contract or the wrong. The courts, however, have been careful, in the leading cases of that class, to note, as the precise ground of legal liability, the knowledge of the facts by the party appropriating the benefit *Murray* v. *Binger*, 1 Keyes 107; *Fitzhugh* v. *Sackett*, not reported; *Bank of Beloit* v. *Beale*, 34 N. Y. 473, 475; *Keeler* v. *Salisbury*, 33 Id. 653; *Farmers' Loan & Trust Co.* v. *Walworth*, 1 Id. 446; *Palmerston* v. *Huxford*, 4 Den. 166, 168; *Bolton* v. *Hillersden*, 1 Ld. Raym. 224; *Precious* v. *Abel*, 1 Esp. 350; *Rimell* v. *Sarpayo*, 1 Car. & Payne, 254; *Bennett* v. *Judson*, 21 N. Y. 238; *Elwell* v. *Chamberlain*, 31 Id. 611.

A principal cannot accept and enjoy the benefits of the bargain made by his agent, without at the same time adopting the instrumentalities by which the agent consummated it.  *Morse* v. *Ryan*, 26 Wis. 356; *Moss* v. *Rossie Lead Mining Co.*, 5 Hill 137; *First Nat. Bank of Wellsburg* v. *Kimberland*, 15 W. Va. 555; *Fister* v. *La Rue*, 15 Barber 323; *First Nat. Bank of Trenton* v. *Badger Lumber Co.*, 54 Mo. App. 327; *Goodwin* v. *Union Screw Co.*, 34 N. H. 378; *Hyatt* v. *Clark*, 118 N. Y. 563; *Ceder* v. *Loud & Sons Lumber Co.*, 24 Am. St. Rep. 136, and note; 4 Thomp. on Corp. sec. 5303.

It is estopped from repudiating such acts of its officers. 4th Thomp. secs. 4930 and 5258; *Lovett* v. *German Reform Church* (N. Y.), 12 Barber 67, 81; *Brown* v. *Wright*, 25 Mo. App. 54.

And such is the case, even if the agent is acting against orders or instructions. 4 Thompson on Corporations, Sec. 4931.

MINER, J.:

This action was brought by the plaintiff, as assignee of the Burton-Gardner Company, against the defendant, for $11,012.85, alleged to be due the company for work done and materials furnished in the construction of defendant's church building.  A trial was had before a jury, and a verdict rendered in favor of the plaintiff for the sum of $6,801.84 damages and $2,040.52 interest.  Defendant appeals from the judgment.

By direction of the church, its building committee, consisting of O. J. Hollister, T. R. Jones, and L. E. Holden, with such duties as were implied by its name, on the 29th day of May, 1891, entered into a written contract with W. E. Barber & Co., a partnership consisting of W. E. Barber and William Milligan, whereby Barber & Co. agreed to

erect the church building under .the direction and to the satisfaction of Warren H. Hayes, architect, and of the building committee of the church, according to the plans and specifications made by the architect, for the sum of $31,350. This contract was signed by W. E. Barber & Co. and the Congregational Church Society of Salt Lake City, by its building committee, O. J. Hollister, chairman, and L. E. Holden and T. R. Jones, committee. The written contract provided that any alteration that might be required in the work shown or described by the drawings or specifications should be made by the contractor, upon the written order of the architect or building committee, and also provided for the manner of determining the value of work required to be done or omitted by changes, for the inspection of the work, and the rejection and removal of materials condemned by the architect or building committee. The contract also provided that the contractor should make no claim for additional work unless the same should be done in pursuance of a written order from the architect or building committee, with the price agreed for such work inserted therein, and that the contractor should not assign or transfer the contract, or any interest therein, without the written consent of the architect or building committee. For the faithful performance of this contract, Barber & Co. gave a bond to the church in the sum of $10,000, with W. S. Burton, W. G. Collett, and O. H. Hardy as sureties. W. S. Burton was president, director, and general manager of the Burton-Gardner Company, and Hardy was also a director. Barber & Co. proceeded to construct the building under the contract, the Burton-Gardner Company furnishing Barber & Co. the lumber and materials used in constructing the same. Mr. Collett did the plumbing and steam-heating work. Payments were made by the church by

checks drawn in favor of Barber & Co. All these checks appear to have passed through the hands of some of the bondsmen, as they have the indorsement of one or more of the bondsmen on them. The total payments máde by the church to Barber & Co. prior to November 7, 1891, amounted to the sum of $18,906.50. Prior to November 7, 1891, some differences and disagreements arose between the church and Barber & Co., it being claimed that the work was not being done satisfactorily to the church; and on November 7, 1891, Barber & Co. assigned the church contract to W. S. Burton, by the consent of the building committee and the sureties on the bond, by writing indorsed upon said contract, of which the following is a copy:

"For a valuable consideration, W. E. Barber & Co., the contractors mentioned in the foregoing contract, do hereby bargain, sell, assign, transfer, set over, and deliver unto W. S. Burton the foregoing and within contract, and all the rights and privileges accruing and to accrue to said W. E. Barber & Co. thereunder; but this assignment and transfer is made and accepted and approved by the undersigned building committee, not for the purposes or with the intent of releasing, and shall not release, said W. E. Barber & Co. of or from any of the obligations of said contract, or from the full performance of the contract, or from damages already arisen or hereafter arising from non-performance of any of the terms and conditions of the contract, and shall not release the sureties on the bond given to secure performance by said W. E. Barber & Co. from their liability on said bond; and we, W. S. Burton and O. H. Hardy, two of the sureties aforesaid, consent to the foregoing. W. E. Barber & Co. W. S. Burton. O. H. Hardy.

"On the above understanding, approved by O. J. Hollister, T. R. Jones, L. E. Holden, Building Committee."

Upon approval of this assignment the church drew a check to W. S. Burton, on account of contract, for $500, for which Burton gave the following receipt:

"Salt Lake City, Utah, Nov. 7, 1891. Received on account of Barber contract, advanced from last payment, five hundred dollars. W. S. Burton, Assignee."

After such assignment the work proceeded upon the building, and checks in payment therefor were drawn by Hollister, chairman of the building committee, in favor of W. S. Burton, until the death of Mr. Hollister, February 12, 1892. After Mr. Hollister's death, checks were drawn by Mr. Hawley, secretary of the church, by direction of W. S. Burton, in favor of the Burton-Gardner Company, except one drawn August 8, 1892, for $3,500, in favor of W. S. Burton. The payments made by the church aggregated the full contract price of the church, of $31,350, and also the extras, amounting to $3,000. There is no dispute but that the church discharged its obligation under the terms of the written contract with Barber & Co., as assigned to W. S. Burton. The plaintiff claimed upon the trial that negotiations were had between O. J. Hollister and W. S. Burton, just prior to November 7, 1891, which resulted in a parol agreement to the effect that Barber & Co. should assign the written contract to Burton for the sole purpose of getting rid of Barber & Co., and that the Burton-Gardner Company should proceed to furnish materials and construct the building, and be paid whatever it cost and was worth to finish the building, and that the written contract was assigned to Burton as a result of these negotiations, but no other agreement was reduced to writing, and all that was done by the Burton-Gardner Company after such assignment was done by virtue of such verbal agreement between Hollister and Burton. It is not claimed or

shown that the church, as such, or its board of trustees, or the building committee, ever gave authority to O. J. Hollister to make such a contract, different from the first contract to complete the church, and no such contract was ever before the board of trustees or the building committee. But plaintiff claimed that the acts and agreements of Hollister concerning the completion of the church building authorized the inference that he had such authority, and that the church, having accepted and kept the work done by the Burton-Gardner Company, was bound to pay for it, and that the payments made ratified the contract claimed to have been made with Hollister. Upon the trial, plaintiff was permitted, under objection, to show the verbal agreement between Hollister and Burton, which varied and set aside the provisions of the assignment of the contract. The assignment of the contract expressly provides that Barber & Co. should not be released from the obligations of the contract; that the sureties on the bond given to secure the performance by said Barber & Co. of the contract, namely, W. S. Burton and O. H. Hardy, should not be released from their liability on the bond; and W. S. Burton and O. H. Hardy individually agreed that they should not be released upon the bond. This assignment of the contract was signed by Barber & Co., Burton, Hardy, and the building committee, who signed: " On the above understanding, approved by O. J. Hollister, T. R. Jones, L. E. Holden, Building Committee." The building committee approved of the assignment on the express understanding recited in the contract. Mr. Hardy and Mr. Burton were permitted by the court, over the objection and exception of the defendant, to testify that just prior to, and at the time of, making the written assignment of the contract to Burton, they were released

from all liability on the bond by Mr. Hollister; that the only purpose of the written assignment was to get rid of Barber & Co.; that the written assignment had no effect, except for that purpose; that during the negotiations which culminated in the written assignment an oral agreement was made between Hollister, on the one part, and Burton & Hardy, on the other, whereby the written contract was rescinded, and a new oral agreement made, whereby the Burton-Gardner Company was to proceed and complete the building, and be paid therefor what it cost, or what it was worth to complete it; that they went to an attorney's office to have the contract drawn, but the attorney was out, and no written contract was ever thereafter drawn or executed, except the assignment; that O. J. Hollister, chairman, drew checks payable to Burton after this assignment was made, until he died, on February 12, 1892, and after his death, with one exception, checks were drawn by Mr. Hawley, secretary of the church, by direction of Burton, in favor of the Burton-Gardner Company.

It is clear that the written assignment is a contract between Mr. Burton, Mr. Hardy, Barber & Co., and the church, and that the oral agreement is wholly inconsistent with it. By the terms of the written assignment, it was specifically agreed that the contract should remain in binding force; that the sureties should not be in any manner released from the bond, but should remain liable thereon. By the terms of the oral agreement which culminated in the making of the written assignment, the written agreement was wholly rescinded and set aside, the sureties released from all liability thereon, and a new contract made, which varied and changed the written contract, and a new and different contract assumed to be made for the completion of the building. It is a univer-

sal rule of law that parol, contemporaneous evidence is inadmissible to contradict or vary the terms of a valid written instrument, and all oral testimony of a previous *colloquium* between the parties, or of conversations or declarations at the time when a written contract was completed, or afterwards, should be rejected, in the absence of fraud or mistake. Greenl. Ev. (15th Ed.) § 275; *Gurney* v. *Morrison* (Wash.), 41 Pac. 192; *Wallace* v. *Richards*, 16 Utah 52.

This general rule applies only to the parties to the written instrument, their representatives, and those claiming under them. *Smith* v. *Moynihan*, 44 Cal. 53, 64; *Hussman* v. *Wilke*, 50 Cal. 250, 254; *Talbot* v. *Wilkins*, 31 Ark. 411, 420.

The plaintiff, as assignee of the Burton-Gardner Company, now claims under a contract claimed to have been made verbally between W. S. Burton, as agent of the Burton-Gardner Company, and the church. Burton, who was superintendent, director, and manager of the Burton-Gardner Company, accepted the assignment of the written contract, on which he and Mr. Hardy, another director, were bondsmen. Such bond bound the sureties to perform the conditions of the Barber contract, which was assigned to Burton. The verbal contract under which plaintiff claims is inconsistent with the written assignment and the contract. Plaintiff, Moyle, is the representative of the Burton-Gardner Company, and stands in their place, and can obtain only such rights as they have under the alleged contract to Burton, as their agent, and for their benefit. The plaintiff cannot claim under a parol agreement claimed to have been made by Burton, as its agent, when the negotiations concerning the matter itself, between Burton and the church, resulted in the written assignment made and accepted by Burton, which was

inconsistent with such parol agreement, and directly contradicted it. No authority from the building committee or the church trustees, at any meeting of either, was shown, authorizing Mr. Hollister to make such a contract as is claimed by the plaintiff, on behalf of the church; nor was any sufficient showing made that would justify the belief that other members of the building committee or church trustees agreed to, acquiesced in, ratified, or knew anything about such verbal agreement, until long after the building was completed, and the original contract price paid. It is true that Mr. Hollister was a member of the board of trustees, and chairman of the building committee;. that he inspected the work of the building, and condemned materials as not being in accordance with the specifications, superintended the building as it was being erected, changed doors and windows, and objected to certain materials being placed in the building, etc.,—although it appears that some of these things were done on written orders from the committee. These acts, if done with the knowledge of defendant. raised the inference that Mr. Hollister had authority to do acts of a similar nature. But the doing of these acts. by themselves, was not sufficient to show that he had implied authority to change and set aside a written contract of the building committee of the church, and verbally increase the obligation of the church $11,000. As a general rule, an individual director has no authority to bind the corporation. Directors cannot act in their individual capacity. They can only bind the corporation when acting together. A corporation speaks through its board of directors, and is not bound by declarations or acts of individual members. 3 Thomp. Corp. § 3906; 4 Thomp. Corp. §§ 4875-4880. If an.officer of a corporation openly exercises a power which presupposes a delegated

authority for the purpose, and the corporate acts show that the corporation must have contemplated the legal existence of such authority, the acts of such officer will be deemed rightful, and the delegated authority will be presumed. But if Mr. Hollister, in a public manner, and for such a length of time that it would be presumed that the defendant knew of such acts, exercised authority of a superintendent, and did all he is shown to have done, the law would imply that he had authority to do those things of a similar character. Implied authority to do certain things confers on the agent no greater power than express authority to do the same thing. Mr. Mechem, in his excellent work on Agency (section 274), says: "Although, as has been seen, authority may be implied from the words and conduct of the parties, or from the circumstances of the case, yet the extent of the authority so implied cannot exceed the necessary and legitimate effect of the facts from which it is inferred, but must be limited to the performance of like acts under like circumstances." And in section 312 the same author says: "If the agency arises by implication from acts done by the agent with the tacit consent or acquiescence of the principal, it is to be limited in its scope to acts of a like nature. If it arises from the general habits of dealing between the parties, it must be confined in its operations to dealings of the same kind. If it arises from the previous employment of the agent in a particular business, it is, in like manner, to be limited to that particular business. In other words, an implied agency is not to be extended by construction beyond the obvious purpose for which it is apparently created." In order for an agent to bind the principal, it must appear that the acts done by the agent were in the exercise of the power delegated to him, and within the limits and scope of the power. *Blum* v. *Robinson*, 24 Cal. 128-141; *Hirshfield* v. *Waldron*, 54 Mich. 649.

15 Utah—6

The trustees authorized the building committee to make a contract with Barber & Co. to build the church on the terms stated in the contract, and with no other persons. Neither the trustees nor the building committee ever directed any contract to be made with Burton or the Burton-Gardner Company to build the church, or to complete building it, except that which grew out of the written assignment. Nor has either body, or any member of it, ever knowingly ratified any contract with the Burton-Gardner Company to build the church. Nor does it appear that either of the bodies representing the church, and having authority to speak for it, or any member of it, except Hollister, had any notice or knowledge of any verbal contract between Hollister and the plaintiff company to complete the church, in violation of the written agreement made and agreed to by all the parties. When completed, the church paid the full contract price, together with extras, as provided for and agreed upon under the contract. These payments were mostly made to Burton, until after Hollister's death, and then, by the direction of Burton, they were paid to the Burton-Gardner Company, and many of the checks passed through Mr. Burton's hands. It is well established that the ratification of an unauthorized act of any agent, in order to be effectual and binding on the principal, must have been made with full knowledge of all material facts; and ignorance, mistake, or misrepresentation of any of the essential circumstances relating to the transaction alleged to have been ratified will absolve the principal from all liability, by reason of the supposed adoption or assent to the previously unauthorized acts of the agent. *Baldwin* v. *Burrows*, 47 N. Y. 192; *Bennecke* v. *Insurance Co.*, 105 U. S. 355; *Dupont* v. *Wertheman*, 10 Cal. 354.

And, in adopting and ratifying what the principal had

authorized the agent to do, he was not adopting and ratifying that which was unauthorized. *Smith* v. *Tracy,* 36 N. Y. 79. We are satisfied that the church did not, through its directors or building committee, ratify the alleged acts of Hollister. It is true, the church retains the structure built upon its real estate; but we know of no way by which the alleged work performed upon the church building can be segregated from it, and returned to the plaintiff. It does not follow that because the church used the building after its completion, thereby unavoidably having the benefit of the work and materials furnished, the church would therefore be liable for the value thereof. *Mills* v. *Berla* (Tex. Civ. App.), 23 S. W. 910; *Baldwin* v. *Burrows,* 47 N. Y. 199. We are of the opinion that the plaintiff offered no valid testimony to show that Mr. Hollister had authority to bind the defendant by the alleged parol contract. Nor was there any ratification of his alleged acts in that respect by the church, building committee, or trustees of the church, shown. The alleged verbal contract varies and contradicts the written contract and assignment by which the parties were bound, and that testimony concerning the verbal contract with Hollister was improperly received in evidence, and should have been stricken out on defendant's motion at the close of plaintiff's case.

The court, over the objection and exception of the defendant, permitted Mr. James and Mr. Pringle, witnesses for the plaintiff, to testify that in a conversation with Mr. Hollister some time after the assignment of the Barber contract, and after Barber had left town, Mr. Hollister said that he had got rid of Barber, but it cost him $500 to get him away; that witness James asked Hollister, out of mere curiosity,—as it did not affect witness' contract with Hollister,—how he got rid of the contractor, and

how he settled up with him; that Hollister replied, "We
bought him off for $500, and I would have given him $1,-
000 to get rid of him, if I had to." The objection to the
testimony was that it was incompetent and irrelevant,
simply calling for a recital of past events, and does not
bind the defendant. The admission of this testimony was
erroneous. The transaction did not concern the witness,
and the declaration was made with reference to a past
transaction, and long after the act referred to, and was
no part of the *res gestœ*. Where the act of the agent
will bind the principal, there his representations, declara-
tions, and admissions respecting the subject-matter will
also bind him, if made at the same time, and constituting
part of the *res gestœ*. "But, an act done by an agent
cannot be varied, qualified, or explained by his declara-
tions, which amount to no more than a mere narration of
past occurrences, or by an isolated conversation held, or
an isolated act done, at a later period. The reason is that
the agent to do the act is not authorized to narrate what
he had done, or how he had done it, and his declaration
is no part of the *res gestœ*." *Railroad Co.* v. *O'Brien*, 119
U. S. 99; Story, Ag. § 134.

Mechem, in his work on Agency (section 714), states the
general rule to be: "The statements, representations, or
admissions must have been made by the agent at the
time of the transaction, and either while he was actually
engaged in the performance, or so soon after as to be in
reality a part of the transaction; or, to use the common
expression, they must have been a part of the *res gestœ*.
If, on the other hand, they were made before the per-
formance was undertaken, or after it was completed, or
while the agent was not engaged in the performance, or
after his authority had expired, they are not admissible.
In such a case they amount to no more than a mere narra-

tive of a past transaction, and do not bind the principal. The reason is that, while the agent was authorized to act or speak at the time and within the scope of his authority, he is not authorized, at a subsequent time, to narrate what he had done, or how he had done it." 1 Greenl. Ev. § 113; *Bank* v. *Clark*, 139 N. Y. 307; *Browning* v. *Kinkle*, 48 Minn. 544; *Polleys* v. *Insurance Co.*, 14 Me. 141.

Under this general rule, it is not required that a perfect coincidence of time between the declaration and the main facts be shown. It is sufficient if the declaration and the main facts are substantially contemporaneous. The declaration, however, must be voluntary and spontaneous, and so proximate in point of time as to grow out of, elucidate, and explain the character and quality of the main fact, and must be so clearly connected with it as virtually to constitute but one entire transaction, and to preclude the idea of design, afterthought, or a mere narrative of a past transaction. Mechem, Ag. § 715; *Railroad Co.* v. *O'Brien*, 119 U. S. 99. From the general trend of the testimony, it appears that this conversation did not occur until several days after the assignment, and the payment of the $500 by the church to Barber & Co., and after Barber had left the city. We are of the opinion that the court erred in admitting the testimony.

There are many exceptions taken to the admission and rejection of testimony in the case, but, as those already passed upon are decisive of the case, we do not consider it necessary to refer to the remaining exceptions. For the errors referred to the judgment of the district court is reversed and set aside, and the case remanded, with directions to grant a new trial.

BARTCH, J., concurs.

ZANE, C. J. (concurring in the result): This being a law

case, the appeal could be taken "on questions of law alone." Const. Utah, art. 8, § 9. Therefore we can only review the action of the court below in deciding questions of law. If a disputed fact was found, without any evidence, we can say, as a matter of law, that the finding was erroneous; otherwise, we cannot overturn or add to the facts as found. So far as the opinion does this, I do not concur in it. Nor do I concur in all the questions of law, as stated. There are, however, sufficient errors in the record to reverse the judgment. Therefore I concur in the reversal, and in the direction for a new trial.