# The Shopper Publishing Company *vs.* The Skat Company.

First Judicial District, Hartford, January Term, 1916.

Prentice, C. J., Thayer, Roraback, Wheeler and Beach, Js.

Evidence of an oral understanding or agreement providing a means or method for carrying into effect a written contract theretofore made between the parties, is not objectionable as an attempt to vary the writing by parol; nor is such an agreement within the statute of frauds.

In the present case the parties had agreed in writing that the plaintiff should furnish orders for the defendant's soap from financially responsible concerns who had not theretofore sold it. *Held* that evidence was admissible of a subsequent oral agreement providing how the parties should determine what were first orders and whether they were from financially responsible concerns or not.

After a partial performance of its obligations the defendant broke its agreement, whereupon the plaintiff ceased to make further efforts to procure first orders, but continued to advertise the defendant's soap to the end of the year, as provided in the written agreement. *Held* that upon the defendant's breach the plaintiff was justified in discontinuing its efforts to secure new customers, and was entitled in this action to recover such compensation as was fairly within the contemplation of the parties, that is, the reasonable profits which it would have realized had the agreement been fulfilled; and that the amount of damages in this instance was not the contract price, but that price less the expenses of the plaintiff in securing first orders.

A new trial will not be granted because of the application of an erroneous measure of damages, if it is apparent that the desired correction would involve, at the most, but an inconsiderable sum.

The evidence in the present case reviewed and *held* to warrant the findings of the trial court favorable to the plaintiff.

Argued January 7th—decided April 19th, 1916.

Action to recover an alleged balance due under an advertising contract, brought to and tried by the Court of Common Pleas in Hartford County, *Smith, J.;* facts found and judgment rendered for the plaintiff for $366, and appeal by the defendant. *No error.*

The plaintiff is a New York corporation located in New York City, and is engaged in publishing and circulating through department stores a monthly magazine called "The Shopper." The defendant is a Connecticut corporation located at Hartford.

On August 5th, 1912, the plaintiff and defendant entered into a contract in which the plaintiff agreed to insert in its publication, The Shopper, a certain advertisement of Skat Hand Soap, and to secure first orders from financially responsible concerns not then selling the soap; and in consideration thereof the defendant agreed to ship the goods so ordered and bill the same at the regular wholesale price either to plaintiff or to the purchasers, and if to the latter, to pay plaintiff in cash for said orders so furnished. The parties further agreed that the contract price should be the total amount of the advertising contracted for (twelve months at $56 per month), that if the plaintiff furnished no orders it was to receive no compensation for the advertising, and that if it furnished a surplus of orders above the advertising contract it was to receive no additional compensation.

Immediately after the execution of this contract, the parties agreed that what were "first orders" from "financially responsible concerns not now selling same," should be determined by the defendant by making such investigation as it desired, and by referring to its own books to ascertain if said concern appeared thereon as selling Skat at the time of the execution of the contract.

Under this contract the plaintiff sent or caused to be sent defendant, and it accepted and filled, orders for Skat aggregating $542.14 in amount, and the defendant received this sum.

The defendant made such investigation as it thought necessary of such orders before deliveries, and all of

these orders were "first orders" from concerns not selling Skat. The defendant paid plaintiff $322.83 to be applied on the contract price for certain orders filled. After May 23d, 1913, the defendant declined to make any further performance of this contract. Thereafter the plaintiff ceased to make efforts to sell Skat, but continued to publish said advertisement for the full term of the contract. There is now due on the contract $349.17, plus interest amounting to $17.45.

*George J. Stoner* and *George O. Brott*, for the appellant (defendant).

*Edward L. Steele*, with whom was *George A. Kellogg*, for the appellee (plaintiff).

WHEELER, J. The motion to correct the finding is not supported by the evidence. The supplementary agreement was not found without evidence. Mr. England, in behalf of the plaintiff, testified that the parties agreed upon a method for determining what should constitute first orders, and his testimony was corroborated by certain of the exhibits. There was evidence that the items claimed as first orders were such. Mr. Blakeslee testified for the defendant that none of these orders were filled until the defendant had investigated the financial standing of those to whom goods were to be shipped under orders sent defendant by plaintiff. He also testified: "We always looked up whether we had sold them before or not, in order to get a line on what their financial standing was first of all." The defendant never notified the plaintiff that any of these orders were not "first orders." From this, in connection with the fact that defendant never notified plaintiff that the orders sent in were not first orders, the inference, in the absence of contradictory evidence, followed that

the orders were first orders and from concerns not before selling Skat.

The defendant was not entitled to a finding that it could not be determined from the books of account kept by it that the concerns from whom orders had been taken had not before been selling Skat. The evidence upon this point was conflicting. In addition, the court was amply justified in finding that the parties had agreed that the information to be found upon the defendant's books was conclusive as to this matter. The books were in its possession. The defendant never notified the plaintiff that the orders sent in were not first orders. The inference was warranted that the orders so accepted and filled were first orders. The evidence of the defendant's witness was contradictory as to whether the books would show whether the concerns, for which orders sent in by the plaintiff had been filled, were "concerns not now selling Skat." This was a fact which in the ordinary course of bookkeeping should have appeared upon the books. We think the court was right in refusing to find that it did not so appear.

Errors assigned upon rulings on evidence are limited in argument to one point. The written contract in effect provided that the plaintiff should furnish orders for Skat, which the defendant should fill, "from financially responsible concerns not now selling same." The court permitted proof, by an oral agreement between the parties made subsequent to the written contract, of a method of determining what should be considered first orders from "financially responsible concerns not now selling same."

It is urged that the written contract is thus permitted to be varied by parol. This is a misunderstanding of the purpose of the evidence. It was an attempt to provide a method of determining one of the provisions

of the contract, the determination of which the contract left open. The trial court properly characterized it: "It is," the judge said, "evidently an arrangement made concerning the execution of the contract, the method of execution, not the changing of any terms." The supplementary understanding is not to the disadvantage of the defendant. It leaves the decision of what are "first orders" to the books of the defendant. If the customer procured by the plaintiff was among the customers appearing upon the books of the defendant, it was not a new order; if it did not so appear, it was. This oral agreement, leaving the settlement of which were first orders and leaving the decision of the financial responsibility of the customers to the defendant, was manifestly fair to the defendant. The sense and meaning of the language used in a contract, or its application to the surrounding circumstances, may be ascertained by evidence *dehors* the contract, since in no other way can the intention of the parties be so certainly ascertained. *In re Curtis-Castle Arbitration,* 64 Conn. 501, 514, 30 Atl. 769. So when the contract provides for the ascertainment of a given fact without providing a method for such ascertainment, a subsequent agreement upon such a method does not vary nor add to the terms of the contract, but is rather an agreement supplementary or collateral to the contract, controlled by its consideration and furnishing a means of carrying out one of its terms. It may be established by parol. It is a means of enforcing a provision of the contract in accordance with the agreed wishes of the parties. Agreements of that sort are not within the statute of frauds.

The defendant's final assignment of error is its claim that the judgment is based upon a wrong measure of damages. The defendant claimed upon the trial, that if the issues were found in favor of the plaintiff it could

recover as damages only the amount of "first orders" from "financially responsible concerns not selling" Skat, less any payments made by the defendant to the plaintiff. The issues were found for the plaintiff. Hence that part of the recovery ($219.31) comprising the difference between the amount of the first orders, $542.14, and the payments made, $322.83, is, the defendant admits, properly within the judgment. Excluding the element of interest, the court found due on the contract, and rendered judgment for, $349.17, the balance of the contract price. So that the amount of the judgment which it is claimed resulted from the application of a wrong theory of damages, is $129.86.

The plaintiff, so far as it could, has fulfilled its part of the contract. After the defendant declined to make further performance, the plaintiff ceased to make efforts to secure "first orders." It was legally justified in this course. Upon the defendant's breach, it became liable for such fair compensation as was reasonably within the contemplation of the parties; and this was the reasonable profits of the contract. *Haynes & Co.* v. *Nye*, 185 Mass. 507, 509, 70 N. E. 932. The trial court held the measure of damage to be the contract price. In some instances it might be. In this case we do not think it is.

It does not follow that there must be a new trial because of this ruling. It appears from the finding that there was no expense which the plaintiff was under in continuing this advertisement after the breach, hence, if that were the only factor to be considered, the contract price would measure the profits. But as a part of the expense to the plaintiff was the securing of first orders, this expense should be deducted in order to get at the true profit. No evidence was offered and no claim made by the defendant as to this. Had this been an item of any considerable size, it is possible it would

have appeared in the case. Its maximum amount, as we read the record, must have been inconsiderable, and the omission from the record of its exact amount does not materially prejudice the defendant. Under these circumstances a new trial ought not to be granted to correct a judgment reached upon the application of an erroneous measure of damages, when that correction will involve, at the most, a sum inconsiderable in amount.

There is no error.

In this opinion the other judges concurred.