**AMERICAN CRYSTAL SUGAR CO. v. NICHOLAS, Collector of Internal Revenue.**

**No. 2341.**

Circuit Court of Appeals, Tenth Circuit.

Dec. 17, 1941.

Irving Hale, Jr., of Denver, Colo. (M. A. Lewis, J. B. Grant, and Lewis & Grant, all of Denver, Colo., on the brief), for appellant.

Hubert L. Will, Sp. Asst. to the Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., J. Louis Monarch, and F. A. Michels, Sp. Assts. to the Atty. Gen., and Thomas J. Morrissey, U. S. Atty., and Ivor O. Wingren, Asst. U. S. Atty., both of Denver Colo., on the brief), for appellee.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

PHILLIPS, Circuit Judge.

The Amalgamated Sugar Company[1] is a corporation organized under the laws of Utah. American Crystal Sugar Company[2] is a corporation organized under the laws of New Jersey. On February 19, 1936, Amalgamated and American executed a written contract. It recited that of the 724,624 shares of issued common stock of Amalgamated, American owned 710,096 shares and that Amalgamated was willing to sell and American was willing to purchase two sugar plants, and other real and personal property described in the contract, belonging to Amalgamated, of the agreed value of $2,135,000. The contract provided that on or before April 15, 1936, Amalgamated should transfer and convey such property to American, and that on the transfer and conveyance thereof, American should transfer and deliver to Amalgamated "710,096 shares of the common capital stock of" Amalgamated of the agreed value of $1,865,000, and pay Amalgamated certain additional sums in cash. The contract further provided that it should be binding upon Amalgamated immediately upon approval of 90 per cent in amount of its outstanding preferred stock; that if such approval should not be procured by April 15, 1936, then Amalgamated might, on April 15, 1936, notify American in writing of its intention either to withdraw from the contract or to be bound thereby regardless of the failure to procure such approval, and that if Amalgamated should not, on or before April 15, 1936, notify American in writing either that it has secured such approval or that it had elected to be bound in the absence thereof, then the contract should be of no further force or effect.

On March 23, 1936, J. R. Bachman, secretary of Amalgamated, gave notice of a special meeting of the stockholders of Amalgamated to be held at Ogden, Utah, on April 14, 1936, for the purpose of amending Amalgamated's Articles of Incorporation. Among the proposed amendments set forth in the notice was one to amend Article IV of the Articles of Incorporation to provide for an authorized capital stock of 750,000 shares of common stock of the par value of $1 per share and certain preferred stock.

On March 24, 1936, a supplemental notice was given stating, among other things, that as a part of the mechanics of effecting a recapitalization, a proposal would be made to issue to American 710,096 shares of new common stock of the par value of $1 per share in exchange for 710,096 shares of common stock of no par value of Amalgamated, then held by American.

The special meeting was held at the appointed time and place. 99.29 per cent of the outstanding common stock and 89.59 per cent of the outstanding preferred stock was represented. The chairman of the meeting reported to the stockholders that a committee of stockholders had developed a plan for recapitalization; that the board of directors, at a meeting held on April 10, 1936, had recommended approval of the plan by the stockholders; that 99 per cent of the owners of outstanding common stock and 89 per cent of the owners of outstanding preferred stock had approved the plan and agreed to be bound thereby. The contract of February 19 was submitted to the stockholders for consideration and action. A resolution approving the plan and stating that when consummated it would result in the amendment of the Articles of Incor-

---

[1] Hereinafter called Amalgamated.

[2] Hereinafter called American.

poration so as to provide for the retirement of Amalgamated's outstanding common stock, the issuance of 750,000 shares of common stock of the par value of $1 per share, and the issuance to American of 710,096 shares of common stock of the par value of $1 per share in exchange for an equal number of shares of Amalgamated common stock of no par value, was duly offered and adopted.

A resolution that the Articles of Incorporation be amended so as to provide an authorized capital stock of 750,000 shares of common stock of the par value of $1 per share was duly offered and adopted.

On April 14, 1936, following the stockholders' meeting, the board of directors of Amalgamated met and duly adopted a resolution stating that Amalgamated elected to accept and be bound by the contract of February 19 and directing that notice thereof be given to American, and that the conveyances and transfers necessary to carry out the contract be executed and delivered.

On April 14, 1936, following the stockholders' and directors' meeting of Amalgamated, a certificate setting forth the amendments to the Articles of Incorporation of Amalgamated was executed by the president and secretary of Amalgamated and filed in the office of the county clerk of Weber County, Utah. On April 16, 1936, the certificate was filed in the office of the Secretary of State of Utah and thereupon he duly issued a certificate of amendment. Thereafter, the certificates of stock held by American were endorsed with a legend reciting that the stock had been changed from no par value to a par value of $1 per share, and thereafter, the certificates were endorsed by American and delivered to Amalgamated, and documentary stamps in the amount of $284.04 were affixed to the certificates.

Thereafter, the Collector served notice on American demanding additional stamp taxes, asserting that the taxes should have been computed on the basis of no par value rather than $1 per share. On July 3, 1939, American, under protest, paid to the Collector $28,119.80, being the additional taxes due if no par value was the proper basis for computing the tax.

Thereafter, American filed its claim for refund. The claim was denied and American instituted this suit to recover the additional taxes paid, with interest from July 3, 1939. From a judgment in favor of the Collector, American has appealed.

At the trial, Bachman and W. N. Wilds, president of American, testified that before the written contract of February 19 was executed, and as a part of the same transaction, American and Amalgamated orally agreed that before the contract of February 19 should become effective, the common stock of Amalgamated would be changed from no par value to a par value of $1 per share and that such change should be made before the transfer of any stock from American to Amalgamated. The trial court admitted this evidence but ruled that it should not be considered because it tended to vary the terms of the written contract.

▬ It is a well-settled general rule that a written contract cannot be contradicted, altered, added to, or varied by parol or extrinsic evidence. The rule is in no sense a rule of evidence, but one of substantive law.[3] The contract was made in Utah and so far as the transfer of stock was concerned was to be performed in that state. Hence, the law of Utah governs the rule, its application, and its limitations.

▬ The courts of Utah, in accordance with the great weight of authority,[4] hold that the rule applies only in controversies between parties to the instrument and those claiming under them.[5] Here, the United States was a stranger to the contract. It asserts a tax liability, not a claim derived from either party to the contract,

---

[3] Wigmore on Evidence, 3d Ed., Vol. 9, § 2400; Ruppert v. Singhi, 243 N. Y. 156, 153 N.E. 33, 34; Pitcairn v. Philip Hiss Co., 3 Cir., 125 F. 110, 113.

[4] Indianapolis Glove Co. v. United States, 7 Cir., 96 F.2d 816, 819; Schneider v. Duffy, D.C.N.J., 43 F.2d 642, 648; Valdes v. Central Altagracia. 225 U.S. 58, 75, 32 S.Ct. 664, 56 L.Ed. 980; Spraul v. Garliepp & Mack, 138 Cal. App. 491, 32 P.2d 657, 659; Smith v. Goethe, 159 Cal. 628, 115 P. 223, 225, Ann.Cas.1912C, 1205; Massie v. Chatom,

163 Cal. 772, 127 P. 56, 57; Sigua Iron Co. v. Greene, 2 Cir., 88 F.2d 207, 216; Lee v. Adsit, 37 N.Y. 78; O'Shea v. New York, C. & St. L. R. Co., 7 Cir., 105 F. 559, 563; Central Coal & Coke Co. v. George S. Good & Co., 8 Cir., 120 F. 793, 799; Folinsbee v. Sawyer, 157 N.Y. 196, 51 N.E. 994; White v. Woods, 183 Ind. 500, 109 N.E. 761, 763.

[5] Moyle v. Congregational Soc. of Salt Lake City, 16 Utah 69, 50 P. 806, 808; Olmstead v. Oregon Short Line R. Co., 27 Utah 515, 76 P. 557, 558.

480

and it could not invoke the parol evidence rule.

■■ Furthermore, the parol evidence rule is subject to a great number of well-recognized exceptions.[6] One is that parol evidence may be received, not to contradict or vary the terms of the written contract, but to explain how it is to be carried out.[7] Here, the contract merely described the subject matter of the transfer as shares of common stock of Amalgamated. It was permissible to show by parol evidence that the parties had agreed that the manner of performance should be by first changing the stock from no par value to a par value of $1 per share and the transfer of the latter stock. Proof of such oral agreement did not vary nor contradict the written contract. It merely identified the particular common stock to be transferred and explained the manner in which the contract was to be carried out.

■ The acceptance of an offer does not relate back to the time when the offer was made. Williston on Contracts, Rev. Ed., Vol. 1, § 96, p. 307; Page on The Law of Contracts, § 166, p. 247.

Here, the written contract was not accepted and did not become effective and binding on Amalgamated until April 15, 1936. Prior thereto, Amalgamated, by proper corporate action, had provided for changing its common stock from no par value to a par value of $1 per share and for the exchange of the no par value stock held by American for stock of a par value of $1 per share. It follows, we think, that at the time the contract was finally entered into and became effective, the parties clearly contemplated the transfer of stock of the par value of $1 per share.

■ We conclude, therefore, that the contract of February 19, 1936, which became effective upon acceptance by Amalgamated on April 15, 1936, provided for the transfer of stock of the par value of $1 per share and that the proper tax was $284.04.

The judgment is reversed and the cause remanded with instructions to proceed further in accordance with this opinion.

---

[6] Stith v. Graham, Tex.Civ.App., 146 S.W. 661, 662; Mathieson Alkali Works v. Virginia Banner Coal Corp., 140 Va. 89, 124 S.E. 470, 474, 475; Jackson County Gin Co. v. McQuistion, 177 Ark. 60, 5 S.W.2d 729, 732; Index Shale Oil Coal Co. v. Wheeler, 81 Colo. 402, 255 P. 982, 984; Ruppert v. Singhi, 243 N.Y. 156, 153 N.E. 33, 34.

[7] Alabama Trunk & Luggage Co. v. Hauer, 214 Ala. 473, 108 So. 339, 341; Smith Premier Typewriter Co. v. Rowan Hardware Co., 143 N.C. 97, 55 S.E. 417, 418; Shopper Pub. Co. v. Skat Co., 90 Conn. 317, 97 A. 317, 319; Morgan v. Steinberg, Tex.Civ.App., 23 S.W.2d 527, 533; Dooley v. Gray, Tex.Civ.App., 54 S.W.2d 558.