**SHACKELFORD v. LATCHUM.**
Civil Action No. 285.

District Court, D. Delaware.
Oct. 16, 1943.

W. S. Potter (of Southerland, Berl & Potter), of Wilmington, Del., for plaintiff.

Stewart Lynch, U. S. Atty., of Wilmington, Del., Samuel O. Clark, Jr., Asst. Atty. Gen., and Andrew D. Sharpe and George J. Laikin, Sp. Assts., for the Collector.

LEAHY, District Judge.

This controversy results from the conflict in the interpretation of a written agreement dated October 21, 1939, between Edwin H. Thomas and plaintiff. Thomas, who owned the property known as No. 1102 Hopeton Road, in Wilmington, Delaware, and plaintiff discussed the sale of the property. Thomas' asking price was $38,000. Plaintiff valued it at between $25,000 and $30,000. Both of them were of the opinion that the common stock of U. S. Steel which was then selling at approximately $76 a share, would increase in value. The agreement which was entered into on October 21, 1939, provided that plaintiff would lend to Thomas $23,085.48 to purchase 300 shares of the common stock of U. S. Steel, and that plaintiff would have an option to purchase the property for $21,000 in the event Steel common increased in value to $138 a share within the period of three years. If Steel decreased in value, plaintiff was protected by a mortgage on the property for the amount advanced to purchase the stock.

The October 21, 1939, agreement provided for an annual rental of $2,255. Plaintiff, for some time had previously occupied the property under a written lease which called for a rental of $3,000 a year with Thomas making the necessary alterations and repairs. Under the agreement of October 21, plaintiff was to make the necessary alterations and repairs. Thomas agreed to pay Shackelford "all dividends upon said three hundred (300) shares of common stock of the United States Steel Corporation up to and including, but not exceeding the sum of Three Thousand Dollars ($3,000.00). In the event that the option hereinabove granted is not exercised prior to October 21, 1942, then the party of the first part (Thomas) undertakes and agrees to pay to the party of the second part (Shackelford) the sum of Three Thousand Dollars ($3,000.00), less the amount of the dividends paid by the party of the first part to the party of the second part."

In 1940 Steel common paid dividends on the 300 shares in the aggregate of $900. All such dividends were paid to Thomas and retained by him. In his income tax return for 1940, Thomas reported the $900 as dividends, but also reported rent in the amount of $1,355.

Though the agreement specifically calls for an annual rental of $2,255, plaintiff contends this was not in fact the real agreement and understanding of the parties. Plaintiff says it was agreed that he should occupy the property during the term, paying as rent the actual carrying charges of $1,255 a year. In addition to a sum necessary to pay the carrying charges, Thomas was in need of $1,000 a year with which to pay the school expenses of his children. Plaintiff says that he agreed to advance Thomas the difference between the annual dividends on the 300 shares of Steel and $1,000 a year, provided that at the end of the three-year term Thomas would repay to plaintiff the amount of all advances. During 1940, plaintiff paid Thomas $1,355. Plaintiff claims that the excess of $100 over the claimed rental of $1,255 represented an advance by plaintiff to Thomas of the difference between the dividends paid on the 300 shares of U. S. Steel, in the amount of $900, and the sum of $1,000. Later when plaintiff purchased the property in the latter part of 1942, he received from Thomas all advances theretofore made under the contract of October 21, 1939.

The crux of this case is whether the rent reserved was $2,255, or, as plaintiff contends, $1,255.

Plaintiff argues that in tax matters the court should regard matters of substance and disregard form and should regard what was done rather than the contractual duties of the participants, relying on United States v. Phellis, 257 U.S. 156, 42 S.Ct. 63, 66 L.Ed. 180, and Weiss v. Stearn, 265 U.S. 242, 44 S.Ct. 490, 68 L.Ed. 1001. These principles of interpretation are current law, but I fail to see how plaintiff can derive any comfort from them.

I am of the opinion that the rent reserved was $2,255. The agreement in express terms calls for rent in that amount. It is well established that such a writing supersedes all previous understandings and the intent of the parties must be ascertained from the writing. Restatement of the Law of Contracts, Comment (b), Section 230. And one who has signed a written contract with knowledge of its language will not be permitted to avoid his obligation on the theory that he failed to understand the plain and unambiguous language of the agreement. See Pugh v. Commissioner, 5

Cir., 49 F.2d 76, certiorari denied 284 U.S. 642, 52 S.Ct. 22, 76 L.Ed. 546.

Much parol evidence was offered at the trial to show what the parties did under the written agreement. I heard such evidence but reserved ruling on its admissibility. Plaintiff argues that this parol evidence does not violate the parol evidence rule under the authority of Plunkett v. Dillon, 4 Del.Ch. 198; and, since the parol evidence rule is a rule of substance, American Crystal Sugar Co. v. Nicholas, 10 Cir., 124 F.2d 477; 3 Wigmore on Evidence, 3rd Ed., Vol. 9, § 2400, the holding as announced by the Delaware Court in Plunkett v. Dillon must control. I do not believe I am bound to follow the Delaware decision under Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, because that rule applies only in diversity cases and jurisdiction is not here based on that ground. Nevertheless, I agree with the holding of the Plunkett case and other cases permitting a party to show by parol evidence the circumstances surrounding the execution of a written agreement and the manner in which its terms are to be carried out. See Lincoln Nat. Life Ins. v. Horwick, 7 Cir., 115 F.2d 892. Moreover, the parol evidence rule cannot be invoked by a third party, such as the Collector of Internal Revenue here. Stern v. Commissioner, 2 Cir., 137 F.2d 43; American Crystal Sugar Co. v. Nicholas, 10 Cir., 124 F.2d 477; Borin Corp. v. Commissioner, 6 Cir., 117 F.2d 917; Indianapolis Glove Co. v. United States, 7 Cir., 96 F.2d 816. I accordingly admit and have considered all the parol evidence offered by plaintiff for the purposes mentioned, but I do not think it is sufficient to disturb the express terms of the agreement.

And what is more important, all the objective facts also (and plaintiff agrees that it is necessary to look through form to substance) point to the conclusion that the rent reserved was $2,255. The sum of $2,255, for example, is a reasonable rental in the light of the actual dealings between the parties. Prior to the agreement of October 21, 1939, the property was rented to the plaintiff for a yearly rental of $3,000. Under that lease Thomas was to make the repairs, but under the October, 1939, agreement the plaintiff was to make the repairs. Hence, it would appear that $2,255 was nearer the reasonable rental than $1,255, and what is reasonable is obviously an important consideration in interpreting an agreement which it is claimed means something other than what it says.

In 1940 the contract of October 21, 1939, was modified. But none of the provisions of the 1939 contract referred to above were changed; and nothing was done toward making the contract read in accordance with what the plaintiff now claims was the real agreement of the parties.

Moreover, Thomas, in filing his 1940 tax return, clearly treated the rent reserved as $2,255. In that return he reported the $900 from Steel common under the paragraph named "Dividends", and as rent on the property in question he reported $1,355. This indicates a rent of $2,255, for the form of the tax return break-up precluded the reporting of the $900 other than as dividends. To reverse and consider form paramount over substance, if the rent was, according to plaintiff's version, merely $1,255, then there was no occasion to report it at $1,355. That Thomas treated the rent reserved as $2,255 in his tax return, I regard as very significant for the return was filed before any controversy arose, and this is an objective circumstance indicating that Thomas understood the agreement to mean what it in specified terms said.

Plaintiff bases his contention that the rent reserved was $1,255 solely upon the portions of the agreement which I quoted above in this opinion. He advances the argument that counsel in preparing the agreement lumped together the payments to be made by the taxpayer, namely $1,255 carrying charges, and $1,000 (essential educational requirement for the landlord's children), being the maximum advance to be made in any year. Then, the argument advances, in order to spell out the intent of the parties to the effect that the plaintiff should give only the difference between the dividends and $1,000, it was provided that Thomas should pay to plaintiff all dividends on the stock not exceeding $3,000. It is claimed that the legal effect of this system of cross-payments was to impose upon plaintiff an obligation to advance only the difference paid in any one year and the sum of $1,000. This interpretation of the agreement is rejected. When the agreement says that "the party of the first part (Thomas) undertakes and agrees to pay to the party of the second part (Shackelford) the sum of Three Thousand Dollars ($3,000.00) less the amount of dividends paid by the party

of the first part (Thomas) to the party of the second part (Shackelford)", it means that Thomas is obligated to pay Shackelford $3,000 in all events. It is a specific obligation upon Thomas and has no connection with any advances made by Shackelford. But, if Thomas pays any dividends to Shackelford—and thus does not receive $2,255 in any one year—this sum shall naturally be deducted from the $3,000 which he is obligated to pay. This is palpably bookkeeping adjustment; and this conclusion is reinforced by the fact that $3,000, under one view, may be considered as approximately 4.3% interest, to be regarded as reasonable interest on the money advanced in the first instance by Shackelford to purchase the stock for Thomas, especially when the mortgage given by Thomas to secure the advance made by Shackelford did not provide for the payment of interest. Plaintiff contends the agreement provides the money should be advanced without interest, but such—to look at substance again—is apparently not the fact.

Plaintiff makes the additional argument that, when the property was sold in 1942, the advances made were credited to Shackelford. There is no significance to this fact. I am not unmindful of the principle that what was done should be a consideration of prime importance in matters of interpretation; but here, the thing done was done post litem motam and was not done under the covenants of the October 21, 1939 agreement.

■ Since the rent reserved was $2,255, it must necessarily follow that the $900 in dividends from Steel common received by Thomas in 1940 benefitted Shackelford. Under their contract, Thomas was to turn this over to Shackelford. Instead, he gave Shackelford credit for $900; and Shackelford paid him an additional $1,355 in cash so that the total rent payment to Thomas for 1940 was $2,255—the sum specifically reserved in the October 21, 1939 agreement. Because the $900 was credited against Shackelford's rent obligation for 1940, it obviously constitutes taxable income to him for that year. Douglas v. Willcuts, 296 U.S. 1, 56 S.Ct. 59, 80 L.Ed. 3, 101 A.L.R. 391; Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, 131 A.L.R. 655; Section 19.212-2 of Regulations 103. See also Peck v. Commissioner, 2 Cir., 77 F.2d 857.

Judgment should be entered for defendant.