BAY TOWING AND DREDGING COMPANY, Inc., Plaintiff,

v.

UNITED STATES of America, Defendant.

OYSTER SHELL CORPORATION, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. A. Nos. 2417, 2418.

United States District Court
S. D. Alabama, S. D.

Sept. 28, 1962.

Vickers, Riis, Murray & Curran, Mobile, Ala., for plaintiffs.

Vernol R. Jansen, Jr., U. S. Atty., Mobile, Ala., Thomas A. Frazier, Jr., Atty., Dept. of Justice, Washington, D. C., for defendant.

DANIEL HOLCOMBE THOMAS, District Judge.

In these consolidated actions, plaintiffs seek to recover transportation taxes, paid with protest, on the ground that such tax was included in a lump sum amount paid by plaintiffs to a carrier under contract. Plaintiff contends such payment to carrier discharged its obligation to the Government.

FINDINGS OF FACT

The jurisdiction of this Court is invoked under the provisions of sections 1346 and 1402 of the Judicial Code (28 U.S.C.A. 1346, 1402).

Plaintiff Bay Towing is an Alabama Corporation and plaintiff Oyster Shell is a Maryland Corporation, but both have their principal office and place of business in the City of Mobile, Alabama.

Plaintiffs Bay Towing and Oyster Shell did from time to time, from August 16, 1954, to August 15, 1957, engage various ships of Alcoa Steamship Company, Inc., hereinafter called Alcoa, to transport oyster shell in bulk from Mobile, Alabama, to Baltimore, Maryland. There was a total of 33 such shipments, 7 for Bay Towing and 26 for Oyster Shell. All 7 shipments by Bay Towing and the

first 11 by Oyster Shell were covered by a separate written contract for each shipment. The next 11 shipments by Oyster Shell were covered by one contract. There was no separate contract or contracts made for the last 4 shipments by Oyster Shell, but it was understood between Alcoa and Oyster Shell that the terms of the single contract covering the 11 previous shipments governed each of these four shipments, except that the freight rate per ton on two of these voyages was different.

The first two contracts between Bay Towing and Alcoa incorporated by reference the terms and conditions of the "Warshipvoy Charter Party"; and all of the remaining contracts, both between Bay Towing and Alcoa and between Oyster Shell and Alcoa, incorporated by reference the terms and conditions of the "Coastvoy Charter Party". Separate invoices were submitted by Alcoa to Bay Towing and to Oyster Shell immediately after each shipment was completed, and each invoice was paid by separate check to Alcoa shortly after receipt of the invoice.

There was no claim or demand made by Alcoa or the United States against Bay Towing and/or Oyster Shell from July 27, 1954, the date of the first contract, until July 1958, at which time Alcoa submitted a statement to Bay Towing in the amount of $3,054.62, and a statement to Oyster Shell in the amount of $14,745.72, for transportation taxes allegedly owed on all of said shipments. Just prior to this time, an audit of Alcoa's books by the Internal Revenue Service had revealed that Alcoa neglected to collect and pay over the federal excise tax on transportation of this property. Bay Towing and Oyster Shell refused to pay those amounts to Alcoa, after which assessments were made against Bay Towing and Oyster Shell by the District Director of Internal Revenue for such amounts, plus interest. These amounts have been paid and this suit is to recover such payments.

## DISCUSSION

Section 4271 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 4271[1] imposed a 3% excise tax upon "the amount paid within * * * the United States for the transportation of property, except coal * * * from one point in the United States to another." The tax imposed by this section was payable by the person making the payment subject to the tax and was collectable by the person receiving such payment.

Tax payers do not dispute that the 33 shipments in question gave rise to taxable transportation payments, nor do they dispute the fact that the tax was to be paid by them. They argue that in fact and in law they have paid the applicable transportation taxes on the shipments to the carrier, Alcoa, because the alleged contract price included the tax. If taxpayers did pay the tax to the transporting company, payment to it would discharge the obligation of the taxpayer as fully as if the payment had been made directly to the Internal Revenue Service. *Armour & Company v. United States*, 159 F.Supp. 380, 141 Ct.Cl. 566. If they did not pay the tax to the carrier, then direct assessment is proper. Reg. Sec. 601.403(c)–2.

The amounts which were paid to Alcoa by plaintiffs were paid in direct response to the invoices submitted by Alcoa. Each invoice clearly and unequivocally charges only one item, either "ocean freight" or "freight earned". But as the invoices also contain the words "lump sum agreement", plaintiffs say the charge necessarily includes the transportation tax owed and that this was intended in the contracts. An examination of the contracts, the charter parties, the invoices, and the testimony of the witnesses fails to confirm this view of the matter. On the contrary, this evidence precludes any interpretation other than that advanced by the Government.

The various contracts, while not identical, contain essentially the same terms

---

1. Repealed on August 1, 1958, by the Tax Rate Extension Act of 1958, Public Law 85–475.

and provisions, the most pertinent to the question here raised being:

"The [Shipper] will pay Alcoa Steamship Company, Inc., freight of $14,500.00 based on a maximum of 7,700 tons of 2,240 pounds. If the vessel lifts more than 7,700 tons additional freight will be paid on the excess amount at a rate of $1.90 per ton of 2,240 pounds. * * * The freight is full of all port charges towage, pilotage, etc. and other expenses ordinarily paid by the steamer under a gross form of charter.

"It is agreed that the terms and conditions of the Warshipvoy Charter Party [or "Coastvoy" Charter Party (2/1/46 Revised)] as they apply shall be considered as incorporated in this agreement."

All of the contracts in question, as well as the warshipvoy and coastvoy charter parties, distinguish between freight, demurrage, and other types of charges both for the owner and for the charterers' account. Paragraph two (2) of the coastvoy charter party relates to the "freight rate". Paragraph six (6) of the warshipvoy charter party covers the same item. Paragraph fourteen (14) of each of these charter parties specifies who is to pay what taxes. In the coastvoy charter party, paragraph 14 reads as follows: "The charterers shall pay all wharfage or dockage charges at loading and/or discharging berths (whether assessed against the vessel or cargo), taxes on freight or cargo, and all costs of weighing, sampling or gauging the cargo."

## CONCLUSIONS OF LAW

■ From the foregoing, it is obvious that freight and taxes were treated as separate items in the contracts, and failure to charge them both on the invoices does not foreclose that question. The language is unambiguous. "The [Shipper] will pay * * * freight * * * The freight is full of * * * expenses ordinarily paid by the steamer * * * The charterers shall pay * * * taxes on freight or cargo * * *" If, in

fact, the parties intended to include the tax in the contract price, then what meaning could possibly be ascribed to the last two sentences above quoted. Any doubt as to the meaning which must now be given is removed by the remaining evidence.

■ The depositions upon written interrogatories of the manager of the accounting department of Alcoa, and the manager of the operating and scheduling department of Alcoa, were offered into evidence at the trial over objection by the plaintiffs. Part of this testimony was used to explain some of the terms used by the parties. The parol evidence rule does not prohibit the introduction of such testimony. American Crystal Sugar Co. v. Nicholas, 10 Cir., 124 F.2d 477. Those depositions clearly show that the term "freight" as used in the shipping industry refers only to the amount charged for the service of transporting property; and that the term "lump sum agreement" as used here refers to the amount to be paid as ocean freight on each voyage. These definitions are substantiated by those invoices where the freight carried exceeded the tonnage contracted for and an additional charge per ton was billed as per the terms of the contract. They are also substantiated by those instances where the tonnage transported was less than that contracted for and payment was for the lump sum amount. Thus it is seen that Alcoa required a minimum amount, the lump sum, as "freight" for each voyage made.

In reaching this decision, I do not mean to hold that the parties could not have included the tax in the contract price had they chosen to so agree. They did not do so in this instance as is clearly shown by the terms of the contracts which include paragraph fourteen of the charter parties. The failure to bill for the tax in the invoices sent by Alcoa cannot override what is there set forth. Judgment will be entered for the defendant.