ATLANTIC TERRA COTTA CO. v MASONS' SUPPLY CO.

(Circuit Court of Appeals, Sixth Circuit.  July 13, 1910.)

No. 2,026.

1. TRIAL (§ 141*)—QUESTION OF LAW OR FACT—DIRECTED VERDICT.
    Where defendant admitted that plaintiff was entitled to a certain amount with interest and alleged a tender thereof, the court erred in directing a verdict for defendant; plaintiff at least being entitled to recover the amount admitted to be due.

    [Ed. Note.—For other cases, see Trial, Cent. Dig. § 336; Dec. Dig. § 141.*]

2. CONTRACTS (§ 176*)—ELEMENTS—MEETING OF MINDS.
    Where plaintiff made a proposal to furnish the terra cotta for a building and entered into a contract, and it was a matter of dispute whether the drawings furnished disclosed side lintels and sills subsequently required by specifications, it was a question for the jury whether, on the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

papers furnished plaintiff, it was required to furnish such lintels and sills.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 767–770, 1097; Dec. Dig. § 176.*

Mutuality in, see note to American Cotton Oil Co. v. Kirk, 15 C. C. A. 543.]

**3.** EVIDENCE (§ 441*)—WRITTEN CONTRACT—SECONDARY EVIDENCE.

A proposal and its acceptance will ordinarily be treated as merged in the written contract, the terms of which may not be altered or varied by secondary evidence.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2030–2047; Dec. Dig. § 441.*]

**4.** EVIDENCE (§ 417*)—PAROL EVIDENCE—CONTRACT TERMS—SPECIFICATIONS.

Where a contract to furnish the terra cotta for a building required plaintiff to furnish terra cotta "shown on drawings and described in specifications," and it was claimed that certain terra cotta required by the specifications and not shown on the drawings was not within the contract, evidence that the ordinary function of specifications is to show how materials called for by plans are to be treated, and not to show materials not shown on the plans, was admissible.

[Ed. Note.—For other cases, see Evidence, Dec. Dig. § 417.*]

**5.** CONTRACTS (§ 28*)—SPECIFICATIONS—EVIDENCE.

Where a contract to furnish the terra cotta for a building required plaintiff to furnish terra cotta "shown on drawings and described in specifications," and plaintiff claimed that the plans and drawings on which its bid was made did not disclose side lintels and sills, for which it sought to recover as extra, evidence that the papers submitted to plaintiff and on which its proposal was based did not include the specifications and did not call for the terra cotta lintels and sills in dispute was admissible.

[Ed. Note.—For other cases, see Contracts, Dec. Dig. § 28.*]

**6.** CONTRACTS (§§ 159, 176*)—CONSTRUCTION—"AND."

A contract required plaintiff to furnish terra cotta for a building "shown on drawings and described in specifications." Plaintiff claimed that the specifications were not furnished at the time it submitted its bid, and that the plans submitted did not include the certain terra cotta lintels and sills subsequently required, and for which plaintiff sought to charge as extra. *Held*, that the word "and," in the clause "shown on the drawings and described in the specifications," was not necessarily to be construed in its disjunctive sense as "or," so as to require plaintiff to furnish terra cotta shown on either the drawings or described in the specifications, and that plaintiff was not required as a matter of law to furnish terra cotta for such lintels and sills under its contract for the contract price.

[Ed. Note.—For other cases, see Contracts, Dec. Dig. §§ 159, 176.*

For other definitions, see Words and Phrases, vol. 1, pp. 385–394; vol. 8, p. 7575.]

In Error to the Circuit Court of the United States for the Northern District of Ohio.

Action by the Atlantic Terra Cotta Company against the Masons' Supply Company. Judgment for defendant, and plaintiff brings error. Reversed.

This action was brought in the court below by plaintiff in error against defendant in error (and the parties will be referred to here as "plaintiff" and "defendant"); the former being a New York corporation and the latter an Ohio corporation. The action was one at law and was brought to issue upon

_____

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

amended petition, an answer, and a reply. The recovery sought was for a balance of $5,513.45 for supply of terra cotta used in the construction of the Hippodrome building, fronting on Euclid and Prospect avenues, Cleveland, Ohio. It appears that the principal contractor was the Reaugh Construction Company; that Mr. Reaugh of that company was a stockholder of the Hippodrome Company and also president of the defendant; and that at his request the written contract now in dispute to furnish terra cotta was made between plaintiff and defendant.

The amended petition comprises two causes of action. The first one is based on the contract before mentioned, which was entered into on July 26, 1906. It is in substance alleged that plaintiff agreed to provide the material and perform the work for delivery of the "terra cotta f. o. b. on cars at destination, shown on drawings and described in specifications prepared by Knox & Elliot, architects for the Hippodrome building" for $12,600; that the value of extra terra cotta work was to be fixed by the architects, and in case of dissent by either party the valuation should be referred to arbitrators; that the defendant subsequently gave written orders to plaintiff to furnish certain extra side lintels and sills of terra cotta, and also to make certain terra cotta replacements; that it furnished the same; but that defendant refused to submit to the decision either of architects or arbitrators any question concerning such side lintels and sills and also refused to pay therefor, claiming they were included in the original contract; that the value of the extra material under the first order is $4,200, and under the second order $60, making plaintiff's entire claim $16,860; but that defendant has paid only $11,346.55, leaving the balance due as before stated. The second cause of action differs only in form from the first one; it is to recover upon quantum valebat. By its answer defendant stated an account showing a balance due to plaintiff on the original contract of $304.03, with interest from October 9, 1907, and a further sum of $60 for replacements of terra cotta with interest from the same date, which sums with interest "defendant hereby tenders plaintiff and brings into court with its answer herein." In the reply admission is made of some of the items of the account in the answer, and denial is made of others.

At the close of all the evidence, the court, on motion of defendant, directed a verdict in its favor, and the case is pending here on error.

M. B. & H. H. Johnson, for plaintiff in error.

Smith, Taft & Arter, for defendant in error.

Before WARRINGTON and KNAPPEN, Circuit Judges, and SANFORD, District Judge.

WARRINGTON, Circuit Judge (after stating the facts as above). The main question is whether plaintiff obligated itself to deliver for the sum of $12,600 all or only a part of the terra cotta which was used in the construction of the Hippodrome building. The solution of the question must depend upon whether the contract of July 26, 1906, was intended to include certain lintels and sills of terra cotta on the sides of the building. It is claimed on behalf of the plaintiff that this is a question of fact, and on behalf of defendant that it is a question of law. Although no opinion was rendered either upon the motion to direct or upon the motion for a new trial, we gather from an interlocutory statement made during the progress of the trial that the learned judge was "inclined to the opinion that the contract covers all of the terra cotta work to be furnished as gathered from the plans and specifications"; or, as otherwise stated, plaintiff was "bound to furnish terra cotta work described in the specifications but which was not shown on the plans."

The issue thus presented arose upon a dispute relative to certain papers upon which plaintiff claims to have submitted its bid and en-

tered into the contract.   Plaintiff claims that only two drawings were received by it, to wit, the Euclid and Prospect avenue elevations, and that no side elevations, floor plans, or specifications were received; but defendant claims the contrary.   There is conflict upon the issue so made, both in the testimony and correspondence offered.   It is insisted by defendant, however, that this conflict is not material, because the contract in terms requires plaintiff "to provide all the material and perform all the work for the delivery of terra cotta f. o. b. cars at destination, shown on drawings and described in specifications prepared" by the architects.

Shortly after the contract was signed (August 3, 1906), the defendant notified plaintiff by letter that it was sending to it by express "plans and specifications, together with three-quarter scale drawings for the Cleveland Hippodrome building," and requesting plaintiff to get "full sized working drawings out and return to us for architects O. K. at once."   Plaintiff replied to this by letter of August 9th, stating:

"In looking over the drawings recently sent for this order, we find among them additional drawings showing side lintels of terra cotta.   These drawings were never sent to us before, consequently were not figured by us in our estimate to you.   *  *  *   We received the specifications after we had signed the contract.   We trust that there will be no misunderstanding as to our part in this matter, as everything seems to us clear.   Undoubtedly the original intention was to have these lintels and sills in some other material except terra cotta."

Plaintiff stated further that it was inclosing its estimate for side lintels and sills in terra cotta.

This resulted in much correspondence; defendant claiming and plaintiff denying that it (plaintiff) had received a copy of the specifications.   Plaintiff expressed its willingness to perform the contract, but declared it would "not include material that is not included in same"; and again that it would "not make sills and lintels without extra order."   In this correspondence it appears that terra cotta companies other than plaintiff had declined to bid on certain papers submitted by defendant, and defendant claimed that it had in consequence sent additional papers not only to other terra cotta companies, but to plaintiff.   While neither company seems to have receded from its original claim, their correspondence by mail and telegrams culminated in a settlement of the dispute by a proposition of plaintiff in a letter of September 11th, and accepted by defendant, as follows:

"Will proceed to fulfill our contract leaving all disputes to arbitration in accordance with article three of our agreement.   *  *  *"

The arbitration clause so referred to is stated in a letter of plaintiff thus:

"All disputes or disagreements of any nature whatsoever arising under this agreement shall also be referred to and settled by the arbitrators.   *  *  *"

Defendant's letter of September 13th, accepting plaintiff's proposition of September 11th, contains also this statement:

"The settlement of any question in difference, to be arbitrated as per article 3 of your contract.   In reference to the color of terra cotta, you will

please disregard the sample of granite recently sent you, as the Hippodrome board have made a change to a pinkish granite. * * * As there has been considerable delay in the progress of this work, it will be necessary to revise the time limit for the delivery of same. * * * The sills and lintels for the theater portion of the building, you will please bear in mind, will be wanted first. * * * "

Plaintiff thereupon supplied the terra cotta in dispute and also made the replacements mentioned in the pleadings; and, while defendant admitted the reasonableness of the charge for the replacements, the parties failed to agree upon a submission either to the architects or to arbitrators of the question relating to the terra cotta used for lintels and sills upon the sides of the building. The provision for arbitration contained in the contract provided that "the decision of any. two of whom (arbitrators) shall be final and binding." Efforts were made to formulate new articles of arbitration, but failed because of defendant's refusal "to sign papers in said matter which provide that a decision of a majority of the arbitrators is final," stating further that "we will treat this as a closed instance."

It will be recalled that the first cause of action of the petition is formulated upon the theory that plaintiff had not by its contract agreed to deliver, for $12,600, terra cotta for the side lintels and sills or to make the replacements mentioned; that it was sought to recover the reasonable value of those items as extras; and that in the second cause of action recovery is sought as upon a quantum valebat. It is further to be borne in mind that in the answer the defendant admitted that there was due to the plaintiff under the contract as defendant interpreted it a balance of $304.03, and as an extra the sum of $60 for replacements, with interest on both sums from October 9, 1907. It is averred also in the answer that defendant "tenders" these sums and brings them "into court with its answer herein"; but we do not discover any evidence offered in support of this averment; nor do we understand that the matter was disposed of when the condition of the pleadings in respect to the sums mentioned in the answer was under consideration by the court and counsel during the progress of the trial.

Now, was defendant entitled to a directed verdict upon this record? Can it be rightfully maintained that plaintiff was not entitled to a recovery of any sum whatever? It might be sufficient to say that it was entitled to recover at least the sums admitted to be due. But, aside from this, we shall consider the more important question whether as matter of law plaintiff was bound to supply terra cotta for the side lintels and sills. Plainly there were two sets of different instruments submitted to some manufacturers of terra cotta, who were prepared to make proposals. Some of them would not bid on one set of these papers. The defendant would seem prima facie to be responsible for the mistake if there were any in the submission of papers to bidders. If it be true that plaintiff made its proposal and entered into the contract upon drawings which did not disclose side lintels and sills, it is clear that there was no actual meeting of minds upon that subject. Turner v. Webster, 24 Kan. 38, 40, 36 Am. Rep. 251, per Justice Brewer. To be sure a proposal and its acceptance would ordi-

narily be treated as merged in the contract, and the terms of the writing could not be altered or varied by secondary evidence.

But in the present instance the dispute arose before performance of the work was begun. Progress could not be made until it was further agreed in writing that the differences respecting side lintels and sills should be settled by arbitration. Moreover, the contract in terms required plaintiff to furnish terra cotta "shown on drawings and described in specifications." Testimony was received to the effect that the ordinary function of specifications is to show how materials called for by plans are to be treated, and not to describe materials which are not shown on the plans. It is evident that the court below was thus seeking to place itself in the situation of the parties to the contract both at the time of its execution and at the date of the settlement of the dispute, with a view of ascertaining what terra cotta was under the circumstances really intended to be furnished for $12,600. This is permissible.

As observed in Nash v. Towne, 5 Wall. 689, 699 (18 L. Ed. 527):

"Courts, in the construction of contracts, look to the language employed, the subject-matter, and the surrounding circumstances. They are never shut out from the same light which the parties enjoyed when the contract was executed, and, in that view, they are entitled to place themselves in the same situation as the parties who made the contract, so as to view the circumstances as they viewed them, and so to judge of the meaning of the words and of the correct application of the language to the things described."

See, also, Merriam v. United States, 107 U. S. 437, 441, 2 Sup. Ct. 536, 27 L. Ed. 531; Hull Coal & Coke Co. v. Empire Coal & Coke Co. (Fourth Circuit) 113 Fed. 256, 260, 51 C. C. A. 213.

Why then, in view of the peculiar circumstances of this case, and also of the written instruments (one dated July 26th, and the other concluded by correspondence later), is not plaintiff entitled to show, if it can show, that the papers actually submitted to it and upon which its proposal was based did not include the specifications and did not call for the terra cotta lintels and sills in dispute? When all the instruments constituting the ultimate contract are construed, the intention of the parties becomes reasonably clear that this question was not to be concluded by the instrument alone of July 26, 1906.

In Sexton v. City of Chicago, 107 Ill. 323, it appears that the city of Chicago had caused a general plan of a city hall to be prepared, consisting of numerous drawings and specifications, and to be placed on file in its department of public works. Sexton, desiring to bid on the iron work, applied at the proper office and was furnished with a duplicate plan of the iron work for the purpose of enabling him to make his estimate and a formal proposal. He offered to "furnish the materials and do the iron work according to plans and specifications" for a sum named. This was accepted, and afterward a formal contract to that effect was executed, and Sexton commenced performance of the work; but later he refused to furnish certain "T" iron rafters for the roof, and also materials and work for a skylight, on the ground that his contract did not require him to do so, and for this refusal his contract was in terms forfeited in accordance with a provision in that behalf. Among the papers upon which he made his estimate was a

tracing which at the time was an exact copy of the original plan. Subsequently the city changed the weight of the "T" iron for the rafters, but through inadvertence this change was not noted on the tracing submitted to bidders. Say the court (at page 332, of 107 Ill.):

"Thus it will be perceived the city is wholly responsible for the mistake out of which this entire controversy has arisen—a mistake which makes a difference in the cost of the building of some $8,000 or $10,000—and yet the city seeks to fasten this whole loss upon the appellant, who was in no sense to blame for it, but on the contrary, it is the direct result of the city's own negligence.

"We do not understand the expression 'plans and specifications,' and other terms of like import, as used in the contract, have exclusive reference to the general plan from which the duplicate plans or 'tracings' are made out. The latter, although for convenience are generally called 'tracings,' are nevertheless as clearly plans, within the meaning of the contract, to the extent of the work represented by them, as the originals from which they are taken, and we think justice, honesty and fair dealing demand they should be so treated in giving a construction to the contract. As already seen, they were given by the city to appellant to make his estimates and do the work by, and he had a right to assume these were the plans referred to in the contract. And if, through the city's negligence, a mistake occurred in making them out, the city must suffer the consequences. * * *"

And again (at page 333 of 107 Ill.):

"Whether the city, under the circumstances, was estopped from denying the correctness of the plans thus furnished appellant, and for that reason had no right to declare a forfeiture of the contract, or whether, by reason of a mutual mistake, caused by the negligence of the city, as to the subject-matter of the contract, no contract was created between them, it is not important to inquire, as in either case the law is with the appellant, and he therefore had the right to acquiesce in the forfeiture of the contract, and proceed, as he did, upon a quantum meruit for the materials and his services. Bishop on Contracts, §§ 186, 228, et seq.; Continental Bank v. Bank of Commonwealth, 50 N. Y. 575."

See, also, Turner v. Webster, supra.

It is further contended, and with considerable show of reason, that the true meaning of the words of the contract of July 26, 1906, which required plaintiff to furnish the terra cotta "shown on the drawings and described in specifications," is that it should furnish such terra cotta and such only as was both shown on the drawings and described in the specifications. This of course is construing the phrase as it is written, and the word "and" conjunctively. It is true that "and" is frequently read as "or"; but this does not seem necessary in order to effectuate the apparent intent of the parties in the present instance. Rice v. United States (Eighth Circuit) 53 Fed. 910, 911, 912, 4 C. C. A. 104; Fredenburg v. Turner, 37 Mich. 402, 405; Mayer v. Cook, 26 Misc. Rep. 774, 57 N. Y. Supp. 94, 95.

Admittedly the terra cotta lintels and sills in dispute were not shown on the drawings, and if in truth the drawings alone were submitted to plaintiff, it is hard to see how either of the parties can be said to have contemplated a supply of terra cotta for the side lintels and sills.

It follows that it was error to hold as matter of law that plaintiff was required for the sum specified in the contract of July 26, 1906, to include terra cotta for these lintels and sills. It is scarcely neces-

sary to say that it was not open to the learned trial judge, and we do not understand that he attempted to weigh the evidence offered in support and in denial of the issue touching submission of the specifications prior to the execution of the contract. That was a matter to be presented to the jury under appropriate instructions. Since a new trial must be granted, we do not consider it either necessary or proper to pass upon the other questions discussed in the briefs.

The decision below will be reversed, with costs.