### MILLER v. A. D. BAKER CO.

(District Court, N. D. Ohio, W. D. Oct. 11, 1912.)

No. 2,334.

EVIDENCE (§ 455*)—WRITTEN CONTRACT—PAROL PROOF—AMBIGUOUS WORDS—"CAPITAL STOCK."

Where plaintiff sued for breach of a written contract to pay him additional compensation if his efforts resulted in an additional profit of 15 per cent. of the capital stock of the employing corporation, the words "capital stock" construed in connection with Gen. Code Ohio, §§ 8667–8671, making preferred stock of an Ohio corporation substantially a liability, with rights only inferior to general debts because subordinate thereto, was so ambiguous as to authorize proof that it was orally agreed that only the corporation's common stock should be considered in determining whether plaintiff's efforts had resulted in an additional 15 per cent. profit, to entitle him to the additional compensation (citing Words and Phrases, vol. 1, pp. 959–967; vol. 8, p. 7595).

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2104; Dec. Dig. § 455.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Action by Anson R. Miller against the A. D. Baker Company. On motion to strike out certain paragraphs of the petition involving an alleged oral understanding on the ground that it would be at variance with the written contract sued on. Overruled.

King, Tracy, Chapman & Welles, of Toledo, Ohio, for plaintiff.

Frank S. Ham, of Wauseon, Ohio, and Brown, Hahn, Sanger & Froehlich, of Toledo, Ohio, for defendant.

KILLITS, District Judge. Plaintiff pleads for breach of a written contract whereby he was to have certain compensation in addition to the sum stipulated in the contract provided his efforts in behalf of the defendant resulted in an additional profit of 15 per cent. upon the "capital stock of the company." He charges that his services resulted in profits of more than 15 per cent. upon the common stock of the company but not 15 per cent. upon the combined common and preferred stock, but avers that at the time of the making of the contract it was represented to him by the officers of the defendant that its preferred capital stock was considered as a loan and that the capital stock referred to in the contract should include only the common stock of the company.

Defendant moves to strike out all the paragraphs of the petition involving this alleged oral understanding on the ground that they tend to bring about a variance through oral evidence of a written document.

Apparently the motion is vital to the plaintiff's case, and, if his allegations are true, and the motion is granted, he is defeated, through the application of a technical rule, in a meritorious claim and becomes thereby the victim of an injustice.

The rule that a written instrument, unambiguous in its terms, may not be varied by testimony of contemporary oral agreements, is too well established to be disregarded. Any one of average experience in the practice has discovered that its operation is often attended with hardship, but nevertheless it may be said to be a salutary rule. The tendency to limit its operation is to work through a determination of the clarity of the terms of the instrument under consideration, and we are required, in considering this motion, to question whether or not the words "capital stock" have such an unambiguous, clearly established meaning as that the rule should operate.

The Supreme Court, in Nash v. Towne, 5 Wall. 699, 18 L. Ed. 527, suggests that:

"Courts, in the construction of contracts, look to the language employed, the subject-matter, and the surrounding circumstances. They are never shut out from the same light which the parties enjoyed when the contract was executed, and, in that view, they are entitled to place themselves in the same situation as the parties who made the contract, so as to view the circumstances as they viewed them, and so to judge of the meaning of the words and of the correct application of the language to the things described."

It is pleaded in one of the paragraphs moved against in the motion before us that defendant's officers, in executing the contract, said that they regarded their preferred stock as a mere loan. If one will pick up the first volume of Words and Phrases Judicially Defined,

and consider the title "Capital Stock," which seems to require for its definition 16 columns of that work, or will read sections 3404 et seq., Thompson on Corporations, on the same subject, he will come to the conclusion that there is no lack of ambiguity and indefiniteness about the meaning of these words and will agree with Judge Thompson that courts themselves are wont to use the words as applicable to many distinct things and with much lack of clear definition.

Of course, strictly speaking, preferred stock is part of the capital stock of a corporation, but it is, especially in states like Ohio, generally regarded as an obligation, a liability. In Ohio (General Code, §§ 8667–8671, inclusive) preferred stock is made by statute so distinct and of such different qualifications from those of common stock that it does operate as a liability against the corporation. The amount of the issue and the amount of the dividend are both limited. Its holders may be restricted in their power over the corporation. They may be compelled to withdraw from the corporation as stockholders upon the tender of the par value of their stock at a time fixed in the certificate. They are excused from liability for the debts of the corporation until after the common stock has been exhausted. In short, preferred stock in Ohio is substantially a liability with rights only inferior to general debts because subordinate thereto.

There is some improbability from the terms of the contract pleaded, even eliminating these averments as to the oral understanding of the meaning of the terms, that preferred stock was included, because the plaintiff was required to increase the net profits of the company by 15 per cent., whereas by law it could not pay a dividend of more than 8 per cent. on preferred stock.

We do not feel inclined to look too closely to the application of a rule which, however salutary, is liable to work hardship. The case is very much like McCulsky v. Klosterman, 20 Or. 108, 25 Pac. 366, 10 L. R. A. 785, wherein there was under consideration a contract containing this provision:

"On the said 19th day of November, 1889, an account of stock shall be taken, and from" the amount of "the outstanding accounts of the firm there shall be first deducted 5 per cent. thereof to cover losses and bad accounts; and then there shall be paid to the said A. E. McCulsky the share of net profits after said deduction to which he is entitled under this agreement."

The question was over the meaning of the words "from the amount of the outstanding accounts of the firm there shall be first deducted 5 per cent. thereof to cover losses and bad accounts." On their face, these words do not seem to be ambiguous. The words "outstanding accounts" have a reasonably definite meaning, but it was contended on the part of the firm that this meaning should be limited to the accounts outstanding after a deduction therefrom of all those estimated to be bad and uncollectible. The court says:

"The argument for the plaintiff is that the language of the contract cited plainly means that 5 per cent. is to be deducted or allowed for bad accounts from the outstanding accounts whether the bad accounts in fact amounted to that much or not, and that it was so plainly fixed for the purpose of easily liquidating the amount of bad accounts as losses to be deducted in computing

the net profits on account of the relation of the parties and to avoid the controversy which might otherwise arise by charging bad accounts to profit and loss, as is usually the custom."

The defendant claimed it was justified by usage of trade to charge all accounts considered uncollectible to profit and loss, and that such usage ought to be considered in determining the meaning of the words in controversy. The court held (quoting the syllabus):

"Where the subject-matter of a contract is the ascertainment of the net profits of a firm for the purpose of paying in cash the value of a one-third share, the term 'outstanding accounts,' unless it otherwise appear, has a particular meaning, different from the common or ordinary meaning."

See, also, Barrett v. Allen, 10 Ohio, 426, where, to prevent injustice, the words "at a fair wholesale factory price" were submitted to the definition of parol evidence to show that a certain scale of prices was intended different from the actual wholesale prices in the market. In some features the case is not unlike Atlantic Terra Cotta Co. v. Masons' Supply Co., 180 Fed. 332, 103 C. C. A. 462.

It is needless to multiply authorities. The motion will be overruled, with exceptions.