Argued March 25, affirmed May 24, 1921.

# PALDANIUS v. STRAUSS.

(198 Pac. 253.)

**Evidence—Common Knowledge That Electric Signs are Used for Advertising Purposes.**

1. It is a matter of common knowledge that electric signs are used for advertising purposes.

**Contracts—Agreement to "Equip" and "Install" Electric Sign Meant to Put in Place Ready for Use.**

2. Under an agreement to "equip" and "install" an electric sign for a moving-picture house, it was the duty of power company to install the sign and put it in place ready for use, and to furnish all the equipment, although the duty to "equip" would not carry with it the duty to put the sign in any specified place, or swing it in any particular manner.

**Contracts—Customs and Usages—Evidence—Parol Evidence Admissible to Show How and Where Electric Sign Should be Placed.**

3. Where written contract to "equip" and "install" electric sign was silent as to where it should be placed or how it should be swung from the building, evidence was admissible of any parol agreement or understanding between the parties as to such matters, and, in the absence of any parol agreement, it was the duty of the one agreeing to install the sign to do so in the usual and customary manner, and parol testimony would then be admissible for the purpose of showing what was the usual or customary method or manner for the installation of that kind of an electric sign, but any contract, verbal or written, must be construed as to the actual and physical conditions which existed at the time it was made.

**Contracts—Moving-picture Theater had No Right to Terminate Contract for Installation of Electric Sign Because Power Company Refused to Change Location of Power Line.**

4. Where, at the time power company agreed to install an electric sign in front of a moving-picture theater, there was a pole and power line or cable on the sidewalk in front of the theater, the theater had no legal right to terminate the written contract because the power company refused to make a requested change in the location of the pole and power line or cable in order to place the sign in a certain position, unless previously agreed upon.

**Contracts—In Action to Recover Rental for Electric Sign Installed, Held That There was no Evidence of any Oral Agreement That Sign Should be Hung in Particular Place.**

5. In an action by a power company against moving-picture theater to recover rental for electric sign installed, *held* that there was no

---

2. Meaning of words "equip" and "equipment," see note in **Ann. Cas.** 1913B, 198.

evidence of any parol contract that the sign should be hung in any particular place or specified manner, and instructions assuming that there was such evidence were erroneous.

Contracts—Hanging Sign at Angle not Compliance With Contract to Install by Power Company.

6. Hanging a swinging sign in front of a moving-picture theater at an angle so that only one side could be seen was not installing it in the usual and customary manner, and hence power company did not comply with its contract to equip and install the sign, and proprietor of theater had the right to take it down and tender it back to the power company on its refusal to adjust the matter.

Appeal and Error—Erroneous Instruction Held not to Require Reversal Under Constitutional Provision.

7. On appeal from a judgment in favor of proprietors of moving-picture theater in an action for rentals by a power company, the judgment must be affirmed, notwithstanding an instruction, erroneously assuming that there was evidence of a parol agreement as to the manner of hanging the sign, where the evidence was conclusive that the sign was not installed in the usual and customary manner under the conditions existing, power company having hung the sign at an angle, so that it would not give the results that the proprietors were supposed to have, and having refused to adjust the matter, under Article VII, Section 3, of the Constitution.

From Clatsop: JAMES A. EAKIN, Judge.

Department 2.

The Pacific Power and Light Company, a corporation, owns and operates an electric light plant in the City of Astoria, and the defendants were there engaged in the moving-picture business, and on August 7, 1917, the Power Company made a written contract with them for an electric sign, the material portions of which are as follows:

"The Company agrees to equip the premises or location, as the case may be, of the Customer at 539 Commercial Street, in Astoria, Oregon, with a system of electrical wiring and connections for the operation of one electric sign of 37–25 watt lamps, and to furnish and install said sign for the Customer and also to furnish the necessary lamps for such service included in the monthly payment hereinafter named. The sign to be as follows: One double face Novelite Interchangeable three-line reading board 3' 6"x10' and

144-8" changeable letters and space plates the word 'Crystal' will be on top of sign in 12" Novelite letters the word 'Crystal' is to flash on and off the interchangeable letters are to burn all the time."

For which the customer agreed to pay $15.60 a month for the period of thirty-six months, and the customer also agreed to obtain the "property owner's permission to install such sign" and to notify the Power Company in writing and that "the Company shall not be required to commence the installation of said sign or equipment until such permission has been obtained." The plaintiff alleges that the Power Company kept and performed all of the conditions of the contract by it to be kept and performed and that on account of the failure and neglect and refusal of the customer to make the payments that the Power Company elected to declare all of the monthly installments due and payable and that there is now due and owing on the contract $561.40, no part of which has been paid; that for a valuable consideration, the claim was duly assigned to the plaintiff who is now the owner and holder thereof and that the money is now due and owing the plaintiff.

For answer the defendants admit the partnership as alleged and deny all other allegations. They plead two further and separate defenses in substance and to the effect that they did make a certain written contract with the Power Company, the exact terms and conditions of which are to them unknown; that the Power Company agreed to build and construct an electrical display sign which was to be of iron, steel, sheet metal and glass fixtures, 12′ 8″ long, including the brackets, by about 4′ high and 10″ in width, which was to be used in advertising the title of all film pictures and the names of the principal "Stars"; that

the Power Company agreed to properly place and install the sign on the premises used by the defendants for running a moving-picture show-house, and that one of its considerations was that another sign contract should be canceled and they should have credit for $100, upon the new one; that the defendants refused to accept the new sign for the reason that it "did not meet with the requirements and specifications and representations as provided by the said contract; that by reason of its faulty construction, the defendants refused and now refuse to accept and pay for the sign; that the Power Company maintained on the highways and streets in the City of Astoria, certain poles upon which were strung electric wires and cables at a distance of about 25′ from the ground immediately in front of the picture show-house of the defendants, and that in about the front of said picture show-house, there was a pole located in the sidewalk about one foot from the south curbing of said Commercial Street; that "the said sign as contracted for was for the purpose of attracting persons to the said show-house"; that under its terms, the sign was to be placed "directly over the walk in front of said picture show-house and on a straight line and parallel with the length of said picture show-house"; that by reason of the wires and cables "it was impossible to permit the said sign to hang as agreed and stipulated and it was necessary, by reason of the situation of said wires and cables that the said sign hang only in a position with one face against the wall of said house or protrude at an angle until the same came in contact with said wires and cables, thus permitting but one face of the said sign to be read by persons on the street, and it being impossible for persons at a distance from the show-

house to see or read the sign whatsoever''; that be-
fore its delivery, the defendants requested the Power
Company to either remove its wires and cables so that
the sign might swing free and in the position as
agreed upon ''or rehang the said sign at a point so
the same would not come in contact with said pole,
wires and cables''; that the Power Company refused
to remove its poles and wires or to rehang the sign
where it would be visible and readable to persons
traveling along the street; that for such reasons the
defendants refused to accept it and canceled the
contract.

The reply denies all of the new matter in the
answer and further alleges that the sign was hung
''strictly in accordance with the request, instructions
and directions of said copartnership of Strauss, Dean
& Madison, and not otherwise.'' Upon such issues
the case was tried to a jury. Among others, the court
gave the following instructions:

''And if you find from the contract and the evi-
dence in support thereof that it was the duty of the
Pacific Power & Light Company under the terms of
this contract to erect and equip this sign in a manner
substantially perpendicular to the face of the building
so that the building on the inside of the sidewalk
would have attached to it a sign which would stand
out lengthwise or in a northerly course across the
sidewalk, and you find that the Pacific Power & Light
Company have not done so, but have given it an angle
or position which is not substantially in compliance
with that required by the contract, then you would have
a right to find that they have not complied with the
terms of the contract and have not performed their
contract and in that event the defendants would not
be liable to them until they had so installed the sign
as required.

''So that if you find that this sign was not erected
in compliance with spirit and purpose of the contract

and that the prevention of the company from so erecting it was not due from any wrongful act on the part of the defendants, and you are of the opinion that the departure from the terms of the contract are material, so as to affect the value of the sign to the defendant, then your verdict should be for the defendant.''

The jury returned a verdict for the defendants upon which judgment was entered and from which the plaintiff appeals, assigning the giving of such instructions as error.          AFFIRMED.

For appellant there was a brief over the name of *Messrs. Norblad & Hesse,* with an oral argument by *Mr. F. C. Hesse.*

For respondent there was a brief and an oral argument by *Mr. James L. Hope.*

JOHNS, J.—1, 2. At the time the contract was made, we must assume that any pole which was in front of the defendant's place of business or that any wires or cables stretched thereon or attached thereto were placed there by some authority or license from the city, and that the contract was made with reference to the conditions as they then and there existed. We must also assume that the defendants made the contract for the purpose of advertising their business. Although they deny its execution, one of the defendants testified that he signed the contract for the firm, and we must treat it as duly executed. The testimony is conclusive that the electric sign which is specifically described in the contract was delivered to the defendants. It will be noted that the contract does not specify where the sign shall be placed or how it shall be hung. The plaintiff relies upon the written contract and claims that parol testimony is not admissible to change or vary its terms and that the

Power Company having equipped and installed the electric sign, it fully complied with the contract. The defendants claim that although the contract is silent as to where the sign should be actually located or how it should be swung, that parol testimony is admissible for the purpose of showing the nature of their business and the reasons why they made the contract, and that it was to be used for advertising purposes and that in the manner in which it was hung it had but little if any value and could not be seen or read by the traveling public. It is claimed that the duty of the company to "equip" and "install" the sign is not broad enough and does not imply that the "sign" shall be so placed and swung that it could be seen and read by the traveling public. Corpus Juris, Volume 20, page 1301, in defining equipment, says:

"The act of equipping or fitting, or the state of being equipped, as for a voyage or an expedition; whatever is used in equipping; the collective designation for the articles comprising an outfit. As applied to transportation, the necessary adjuncts of a railway; the rolling stock and other movable property used in operating the railroad, as cars, locomotives, etc."

In *United States Rubber Co. of California* v. *Washington Engineering Co.*, 86 Wash. 180 (149 Pac. 706, L. R. A. 1915F, 951), the court says:

" 'Equipment' is, what the word imports, the outfit necessary to enable the contractor to perform the agreed service, the tolls, implements and appliances which might have been previously used or might be subsequently used by the contractor in carrying on other work of like character."

The duty to equip would not carry with it the duty to put the sign in any specified place or swing it in any particular manner.

Webster's New International Dictionary defines the word "install" as follows:

"To set up or fix in position for use or service; as, to install a heating or lighting system. Installation, the whole of a system of machines, apparatus and accessories set up and arranged for working, as in electric lighting, transmission of power, etc."

The New Standard Dictionary defines the word:

"To establish in a place or position; as to install a guest at the fireside. To place in position for service or use; as, to install a hot-water system."

Although the use and installation of electric signs is modern, it is very common and general, and they are now very numerous in the cities and can be found in almost every little town, and it is a matter of common knowledge that they are used for advertising purposes. We have a right to assume that the defendants made the contract to advertise their business. It was the duty of the Power Company to install the electric sign specified in the contract, and put it in place ready for use and to furnish all the equipment.

3, 4. The contract being silent as to where the sign should be placed or how it should be swung from the building, evidence was admissible of any parol agreement or understanding between the parties as to such matters, and in the absence of any parol agreement between them, it was the duty of the plaintiff to install the sign in the usual and customary manner, and parol testimony would then be admissible for the purpose of showing what was the usual or customary method or manner for the installation of that kind of an electric sign, but any contract verbal or written must be construed as to the actual and physical conditions which existed at the time it was made. After

the contract was signed, the defendants did not have any legal right to have a change made in any of the existing conditions. Any proposed change in the location of the pole, wires or cable should have been provided for in the written contract or should have been made before it was signed. The defendants had no legal right to terminate the written contract because the plaintiff refused to make any requested change in the location of the pole, power line or cable.

5. Although the proof is conclusive that the written contract was duly executed, the defendants pleaded an oral contract, and alleged that by its terms the Power Company agreed to hang the sign at a particular place and in a specified manner and it will be noted that each of the above instructions are founded upon the alleged oral contract. The defendant J. D. Strauss, with whom the alleged oral contract, if any, was made, testified:

"Q. Do you know who put the sign up there?

"A. I was there the day they were working on it. The only man I know by name was this man Housh.

"Q. This man, the foreman of the Pacific Power and Light Company? [Indicating.]

"A. Yes, sir.

"Q. Did you have anything to do with the putting of the sign up there?

"A. Nothing at all.

"Q. Did you give him any orders as to where the sign was to be placed?

"A. No.

"Q. What, if anything, did you say to Mr. Housh that day?

"A. Mr. Housh told me the sign had arrived and I said, 'Hang it up,' and I supposed they knew their business and would hang it properly.

"Q. Did you say anything to him further or did he say anything to you that day about this feeder wire?

"A. No. * *

"Q. Did you see the men working to put it up there?

"A. Yes, sir, I saw them hanging the sign."

For such reasons each of the instructions were both erroneous and prejudicial. There was no parol evidence of any contract that the sign should be hung in any particular place or specified manner.

F. M. Housh was the construction foreman for the Power Company and the sign was installed under his directions. He testified that he had a talk with Mr. Strauss the morning that the sign was hung.

"Q. What was the talk?

"A. I simply asked him if he had any specific place to hang the sign. He said no, if I remember right. He told me no, and I suggested that we should hang it there in the center of the building before the arch or on the side of the building lower down.

"Q. Did you ask Mr. Strauss where the sign was to be hung?

"A. I asked him if he had any preference as to where it was to be hung.

"Q. And he did not direct you to any particular place?

"A. No, only he said it was to be near the center of the building.

"Q. You knew that the high tension wire extended right out there a few feet, didn't you?

"A. Yes, sir.

"Q. You knew that the sign was to be a swinging sign?

"A. Yes, sir.

"Q. And swinging out from the entrance of the Theater?

"A. Yes, sir.

"Q. And you knew when you were hanging it that it would be unable to swing out at that time?

"A. Yes, sir. * *

"Q. You did not realize that the sign could not be swung out?

"A. Not until after the sign was swung up into place. * *

"A. It was called to my attention that the sign was not swung out into the street the way it should have been."

Upon the question as to how the sign was installed Housh further testified:

"Q. Wasn't it practical to hang that sign out at an angle such as the sign was left at?
"A. No.                                          .
"Q. Leaving the sign out at the angle you did was not giving the results to these people that they were supposed to have and that they had paid for?
"A. No."

6. 7. This is strong evidence that the sign was not installed as it should have been and coupled with the fact that as it was put in place it could only be seen from one side of the street and for a short distance, and that it did not have any advertising value, makes it conclusive that for the purposes for which it was intended, the sign was not installed in the usual and customary manner under the conditions then existing. For such reasons the Power Company did not comply with the contract. Strauss left for Boise on the day the sign was installed. After his return he promptly made a vigorous complaint about the way it was installed and upon the refusal of the Power Company to adjust the matter, tore the sign down and tendered it back to the company. Although each instruction was erroneous, the judgment must be affirmed, under Article VII, Section 3, of the Constitution.

AFFIRMED.

BURNETT, C. J., dissenting.

BROWN, J., concurs.

BEAN, J., specially concurs.

BURNETT, C. J., Dissenting.—A jury trial within the meaning of the constitution consists only in the admission of proper evidence according to the pleadings as the parties have framed them, coupled with instructions apropos to such pleadings. When either of these elements is wanting, the parties have not had the jury trial which the constitution guarantees to all suitors. Admittedly, the instructions mentioned do not conform to the evidence, there being no testimony to support them. In this there was plain and palpable error, a departure from one of the principal ingredients of the jury trial. The judgment should be reversed and a new trial ordered.

For these reasons I dissent from the opinion rendered by Mr. Justice JOHNS.

BEAN, J., Concurring Specially.—The controversy in this case is in regard to instructions given by the trial court to the jury concerning a contract for an electric sign, the material portions of which, so far as written, are as follows:

"Upon the conditions hereinafter set forth, the Company agrees to equip the premises or location, as the case may be, of the Customer at 539 Commercial Street, in Astoria, Oregon, with a system of electrical wiring and connections for the operation of one electric sign of 37–25 watt lamps, and to furnish and install said sign for the Customer and also to furnish the necessary lamps for such service included in the monthly payment hereinafter named. The sign to be as follows: One double face Novelite Interchangeable three line reading board 3'6"x10' and 144–8" changeable letters and space plates the word 'Crystal' will be on top of sign in 12" Novelite letters the word 'Crystal' is to flash on and off the interchangeable letters are to burn all the time."

It will be observed that the contract stipulates that the company will equip the premises and furnish and install a sign for the defendants. The kind of sign is specified, but the manner in which it is to be installed or hung is in no way described in the written instrument. Under these circumstances, and without any exception being saved to the introduction of testimony, the court admitted evidence as to what the agreement was touching the manner of the installation of the sign, to the effect that it was to be at right angles with the show building of the defendants so that it might be read by the people approaching the sign from either direction. After stating the contention of the defendants as set forth in their answer the court charged the jury that the duty of proving the contract rested upon the plaintiff, also:

"That the contract alleged and set out in the complaint was entered into and that the Pacific Power and Light Company substantially performed all of the provisions of that contract as required. In considering the contract, you will notice that there is nothing in the language of the contract which indicates how the sign is to be erected with reference to the front of the building—whether it is to be laid out along the face of the building or whether it is to extend across the face of the sidewalk, or down the sidewalk. It is not shown by the contract. So that is a question for you to determine, and you can determine it by the terms of the contract and if that does not satisfy your mind you can determine it or resort to circumstances surrounding the transaction, taking into consideration the purposes for which the sign was to be erected and the idea or thought that must have been in the mind of the parties at the time that the contract was entered into, and in that way determine what was the intention of the parties with reference to the fact that at the time they entered into the contract, and if you find from the contract and the evidence in support thereof that it was the duty of the Pacific Power

and Light Company under the terms of this contract to erect and equip this sign in a manner substantially perpendicular to the face of the building so that the building on the inside of the sidewalk would have attached to it a sign which would stand out lengthwise or in a northerly course across the sidewalk, and you find that the Pacific Power and Light Company have not done so, but have given it an angle or position which is not substantially in compliance with that required by the contract then you would have a right to find that they have not complied with the terms of the contract and have not performed their contract and in that event the defendants would not be liable to them until they had so installed the sign as required.''

The court further explained among other things that a slight or immaterial deviation was not sufficient to invalidate the contract. Counsel for plaintiff saved an exception to the instruction to the jury for the reason that the court referred to and based the instruction upon the second further and separate defense pleaded by the defendants, the objectionable portion of which pleading, as understood, is as follows:

''That under and by the terms of said agreement the said sign as contracted for was to be so placed by said company on the said wall of said picture showhouse so that the same would hang directly over the walk in front of said picture show-house and on a straight line and parallel with the length of said picture show-house; that said sign so attempted to be delivered by said company, together with the brackets upon which the same was hung, had about a length or between twelve and thirteen feet; that when said company attempted to deliver said sign it placed and hung the same on the north wall of said house, at a point directly opposite said wires and cables as mentioned being so situated, it was impossible to permit the said sign to hang as agreed and stipulated and it was necessary, by reason of the situation of said

wires and cables that the said sign hang only in a
position with one face against the wall of said house
or protrude at an angle until the same came in con-
tact with said wires and cables, thus permitting but
one face of the said sign to be read by persons on
the street, and it being impossible for persons at a
distance from the show-house to see or read the
sign * * ''

It is further averred in the answer that defendants
requested the company to install the sign so that it
could be read by persons approaching it from either
direction. It is the contention of plaintiff that the
written contract does not include a requirement for
the placing of the sign as desired by plaintiff.

While no exception was saved to the testimony, the
real objection to the instructions of the court, as the
record is understood, is that the charge is based upon
oral evidence as to the agreement which is not con-
tained in the written contract. There is no claim that
oral evidence was submitted to the jury contradict-
ing or varying the terms of the written contract in
any respect where that memorandum expressed the
terms agreed upon. The writing being silent as to
the manner in which the sign should be installed it
was competent for the defendants to show, and for
the jury to consider, that the details or specifications
of the manner in which the sign should be installed
were agreed upon between the parties to the contract
although not embodied in the written memorandum.

The rule of evidence that all preliminary negotia-
tions and agreements are to be deemed merged in the
final settled instruments executed by the parties does
not prevent a contract from being partly oral and
partly evidenced in writing. The question of whether
an entire contract was reduced to writing, or an inde-
pendent collateral agreement was made, is one of

fact for the jury, if there is any evidence to sustain such parol agreement: 6 R. C. L., p. 640, § 55; *Hines* v. *Wilcox,* 96 Tenn. 148 (33 S. W. 914, 54 Am. St. Rep. 823, 34 L. R. A. 824, 832; note, 3 L. R. A. 308; *Roberts* v. *Bonaparte,* 73 Md. 191 (20 Atl. 918, 10 L. R. A. 689); *McNeil* v. *Boston Chamber of Commerce,* 154 Mass. 277 (28 N. E. 245, 13 L. R. A. 559); *Horn* v. *Hansen,* 56 Minn. 43 (57 N. W. 315, 22 L. R. A. 617); *Barker* v. *Bradley,* 42 N. Y. 316 (1 Am. Rep. 521); *Thurston* v. *Ludwig,* 6 Ohio St. 1 (67 Am. Dec. 328); *Turner* v. *Abbott,* 116 Tenn. 718 (94 S. W. 64, 8 Ann. Cas. 150, 6 L. R. A. (N. S.) 892); *American Contract Co.* v. *Bullen Bridge Co.,* 29 Or. 549 (46 Pac. 138).

Mr. Wigmore treats of the subject at length in his work on Evidence. We quote in part:

"The most usual controversy arises in cases of partial integration, i. e., where a certain part of a transaction has been embodied in a single writing, but another part has been left in some other form. Here obviously the rule against disputing the terms of the document will be applicable to *so much of the transaction as is so embodied, but not to the remainder.* * *

"(1) Whether a particular subject of negotiation is embodied by the writing *depends wholly upon the intent of the parties thereto.* * *

"(2) This intent must be sought where always intent must be sought (*ante,* Sections 42, 1714, 1790), namely in the *conduct and language* of the parties and the *surrounding circumstances.* The document alone will not suffice. What it was intended to cover cannot be known till we know what there was to cover": 4 Wigmore on Ev., § 2430.

The rule is stated in 22 C. J., page 1144, Section 1531, thus:

"The parol evidence rule does not preclude the reception of parol evidence with reference to a matter evidenced by the writing, where such evidence relates to a matter *in pais,* or is of such a character that it

does not tend to vary or contradict the written instrument. Thus there is no objection to the admission of evidence which is offered not to contradict or vary the terms of a written agreement, but simply to explain how it is to be carried out. * * "

See *Salem Kings Products Co.* v. *Ramp, ante,* p. 329 (196 Pac. 401, 409); *Atlantic Terra Cotta Co.* v. *Masons' Supply Co.,* 180 Fed. 332 (103 C. C. A. 462); *Kansas City etc. R. Co.* v. *Smithson,* 113 Ark. 305 (158 S. W. 555, Ann. Cas. 1916C, 568); *Shopper Pub. Co.* v. *Skat Co.,* 90 Conn. 317, (97 Atl. 317); *Fountain* v. *Hagan Gas Engine etc. Co.,* 140 Ga. 70 (78 S. E. 423); *Foote etc. Co.* v. *Southern Wood Preserving Co.,* 11 Ga. App. 164 (74 S. E. 1037); *Gardner* v. *Denison,* 217 Mass. 492 (105 N. E. 359, 51 L. R. A. (N. S.) 1108); *Willis* v. *Fernald,* 33 N. J. L. 206; *Smith Premier Typewriter Co.* v. *Rowan Hardware Co.,* 143 N. C. 97 (55 S. E. 417); *Easton* v. *Woodbury,* 71 S. C. 250 (50 S. E. 790); *Missouri etc. R. Co.* v. *Stark Grain Co.,* 103 Tex. 542 (131 S. W. 410); *Emerson* v. *Stratton,* 107 Va. 303 (58 S. E. 577); *Crawford* v. *Workman,* 64 W. Va. 10 (61 S. E. 319); *Mann* v. *Paper Co.,* 41 N. B. 199 (5 Dom. L. R. 596, 11 East L. R. 81); *McLean* v. *Crown Tailoring Co.,* 29 Ont. L. 455 (5 Ont. W. N. 217, 15 Dom. L. R. 353); *Bulmer* v. *Brumwell,* 13 Ont. App. 411.

The plaintiff has no reason to complain because the court allowed the jury to take into consideration oral evidence as to how it was agreed between the company and the defendants that the sign should be installed.

The defendants are not held to any strict rule as to how such signs are customarily erected. It does not appear, in so far as it is observed, that the agreement as shown by the evidence differed in any way

from the customary practical way of advertising by means of such a sign. It was not an unreasonable demand for the defendants to require the sign to be placed a few inches or feet away from the pole mentioned, so that they could have a double faced sign, if it was so understood and agreed. A one-eyed sign would not fill the requirement of such a stipulation. The proceedings excepted to by counsel for plaintiff fairly submitted the cause to the jury. The language of the instruction may not be perfect, but it is not subject to the challenge of plaintiff.

The judgment should be affirmed.

---

Motion to dismiss appeal allowed October 7, 1919.
Argued on the merits February 8, affirmed April 12, rehearing denied May 31, 1921.